**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF MISSOURI**

**Steven L. Reed**

**V. CIVIL ACTION**



RECEIVED SEP 0 2019 PAIGE WITMORE-WYNN, CLK U.S. DISTRICT COURT WEST DISTRICT OF MISSOURI

**MISSOURI STATE UNIVERSITY, AKA as MSU Defendant:**
**Defendants: Missouri State University President Cliff Smart, Missouri State**
**University Security Guard, Missouri State University Board of Governors, City**
**of Springfield and Chief of Police, Missouri, Governor of Missouri, Library**
**Staff, and Vice Presidents of Missouri State University, And other John and Jane**
**Does as discovery reveals:**

### VERIFIED COMPLAINT

### DEMAND FOR JURY TRIAL AS ALLOWED BY CONSTITUTION CONCERNING FREE SPEECH AND PETITIONING GOVERNMENT FOR REDRESS OF GRIEVANCES AND EFFECTING GOVERNMENTAL FUNCTIONING AND SECONDLY CONCERNING "FIRST IMPRESSION OF STATE LAW" OF SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI OF WHICH MANDATES ALL-STATE FUNDED INSTITUTIONS OF HIGHER LEARNING THAT ARE FUNDED IN PART BY THE STATE BE "FREE SPEECH ZONES"

### THIS CAUSE IS SEEKING SUBSTAINTIAL JUSTICE IN THE CASE WITH CITY OF SPRINGFIELD AND MSU WHO HAVE A RECORD OF INTIMIDATION AND HARRASHEMENT ABD THE JUSTICE SYATEM IS SUPPOSSED TO ACT WHEB WRONGS ARE CORRECTED USUALLY A MONEY FINE WILL DETER SUCH ACTIONS IN THE FUTURE.

**Rule of Law Definition**: That individuals, persons and government shall submit to, obey and be regulated by law, and not arbitrary action by an individual or a group of individuals. Related Terms: **Judicial** Independence, Anarchy, Democracy, **Law**. A government of **law** and not of men.

### FAIR AND OPEN ELECTIONS MATTER

### DEMANDED ON ALL COUNTS

### AS discovery reveals jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages, and Punitive Damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

<u>**CIVIL RIGHTS "FREEDOM OF SPEECH" CONSTITUTIONAL 1st, 4th, 5th, 6th, 7th, 8th, 9th, and 14th Amendments to the United States Constitution.**</u>

ADDITIONAL CIVIL RIGHTS AND "FREEDOM OF SPEECH" CONSTITUTIONAL VIOLATIONS OUTLINED IN MISSOURI LAW SENATE BILL NO. 93 98TH GENERAL ASSEMBLY. Reported from the Committee on Education, March 17, 2015, with the recommendation that the Senate Committee Substitute do pass. Senate Committee Substitute for Senate Bill No. 93, adopted March 31, 2015. Taken up for Perfection March 31, 2015. Bill declared Perfected and Ordered Printed. ADRIANE D. CROUSE, Secretary. 0582S.03P AN ACT To amend chapter 173, RSMo, by adding thereto one new section relating to free speech at public institutions of higher education.

**Other defendants Jane Does, and other John Does,** who acted in conspiracy with one or more defendants to violate plaintiff's right by demanding he leave Missouri State Campus and use of power to threaten arrest and punishment.

**1. Missouri State University President Cliff Smart,**

**2. Missouri State University Security Guard,**

**3. Missouri State University Board of Governors,**

**4. City of Springfield, Missouri and Chief of Police,**

**5. Governor of Missouri,**

**6. Library Staff, and Vice Presidents of Missouri State University,**

**7. And other John and Jane Does as discovery reveals:**

**And as discovery reveals,**

**Other John Does,**

**Other Jane Does,**

**Library Staff,**

**Vice Presidents of Missouri State University,**

**Defendants**

-----------------------------------------------------------------------

**Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City**

of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals:

## INTRODUCTION

Steven L. Reed of Missouri hereby asserts the following claims against the defendants in the above-entitled action:

> Tort being a wrong committed against another person that the law provides some kind of remedy for. The remedy is most often monetary awards by a court. In the instant cause of action Intentional Tort applies since the tortfeasor MSU, et. al. done things on purpose to cause harm to Steven L. Reed. The grievances of injustice and wrongful treatment must be addressed by a Jury of peers.

(1) Tort violation of: 42 U.S.C. § 1983: UD Code – section 1983: civil action for deprivation of rights

(2) Tort violation of: U.S.C. 1983, 1985, 1986, 1988: threat of arrest, imprisonment, kidnapping, and harassment

(3) Tort violations of 42 U.S.C. 1983: Detention

(4) Tort violation of 42 U.S.C. 1983, 42 U.S.C. 1971ff: Torts of coercion, intimidation and defamation

(5) Tort violation of 42 U.S.C. 1983, 42 U.S.C. 1985: Conspiracy

(6.) Tort violation of 42 U.S.C. 1985: Tort was conspiracy to violate civil and political rights

(7) Tort of malicious prosecution; Intentional tort violations of 42 U.S.C. 1983 refusing or neglecting to prevent detainment, badgering, harassment,

(8) Tort of malicious abuse of process; Violations of 42 U.S.C. 1983: and the tort of malicious prosecution

(9) Tort of false arrest and imprisonment; Malicious abuse of process

(10) tort of threat of false arrest and/or threat of; Violation of civil rights acts of 1964 and 1968 as amended security guard said Reed must leave MSU property right away

(11) Tort of False arrest and/or threat of and actual arrest of Reed on 09/06/2000 while Vice Presidential Candidate was on campus not far where Reed set up a volunteer voter registration table which was a title IX violation (see more SMSU – MSU was sued by Bee Payne Stewart and Joyce Mahoney), Reed contends if he were a female or minority

he would not have been arrested and taken to jail and had to pay $100 to bail out and in the 10/29/2016 incident Reed contends he would not have been detained, and harassed and badger and bullied if Steven L. Reed was a female or a minority. The City of Springfield Prosecutor and Police colluded with MSU to arrest and jail Plaintiff Reed for doing volunteer voter registration.;

(12) Tort of Threat of assault and battery and defamation of character;

(13) Tort of conspiracy, intentional infliction of emotional distress and mental cruelty;

(14) Tort of threat of false arrest; Violation of civil rights acts of 1964 and 1968 and as amended

(15) Tort of assault and battery and defamation of character and threat of false arrest and abuse of power

(16) Tort of assault and battery and defamation of character

(17) Tort violation of 42 USC 2000a prohibition against public accommodations

(18) Tort conspiracy to deny civil and political rights

(19) Tort of interference with right to equal access to public state offices including job council of the Ozarks and denial of equal access, accommodation to public places and property

(20) Tort reserved for negligence

## EXHIBIT NUMBER ONE SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI

### JURISDICTION AND VENUE

**1. Jurisdiction of this court is believed to arise under 28 U.S. C. secs. 1331, 1337, 1343, and 1367(a); 42 U.S.C. secs. 1983, 1985, 1986 and 1988; 42 USC 1971ff; and 18 U.S.C. 1961-1968. This Court also has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, and 2201. Venue in the United States District Court for the Western District of Missouri is proper pursuant to 28 U.S.C. § 1391 and Equal Protection Clause of the Fourteenth Amendment. Jurisdiction of this Court also includes enforcement of Constitutional Rights which roots can also be found in: 42 USCS § 1988 and provisions of sections 1977. 1977A, 1978, 1979, 1980 and 1981 of the Revised Statutes [42 USCS §§ 1981-1983, 1985, 1986], title of Public Law 92-318 [20 USCS §§ 1681 et seq.].**

**2. Jurisdiction of this court for the pendent claims may also be authorized by F.R.Civ.P. 18(a), and may also arise under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966). Concerning any immunity of Security Guard and superiors a threat of arrest on Plaintiff Steven L. Reed. The Constitution and Federal Law are the Supreme Law of the Land. NO law may contradict the Constitution. Jurisdiction also falls under 42 U.S.C. § 1983 which was designed to allow those who are mistreated by those administering state law to file suit against them in federal court.**

In SAUCIER v. KATZ ET AL - 533 U.S. 194 The court concluded that this step and the merits of a Fourth Amendment excessive force claim are identical since both concern the objective reasonableness of the officer's conduct in light of the circumstances the officer faced at the scene. Thus, it found, summary judgment based on qualified immunity was inappropriate.....A qualified immunity defense must be considered in proper sequence. A ruling should be made early in the proceedings so that the cost and expenses of trial are avoided where the defense is dispositive. Such immunity is an entitlement not to stand trial, not a defense from liability.

**MONROE V. PAPE, 365 U. S. 167 (1961) says (d) Misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken "under color of" state law within the meaning of § 1979. United States v. Classic, 313 U.S. 299; Screws v. United States, 325 U.S. 91 Pp. 365 U.S. 183-187**

## INTRODUCTION OF CONSTITUTIONAL ISSUE OF DENIAL OF AND PROOF OF JURISDICTION

Paperwork attained by this Court "Self-Help Resources for the Self-Represented Litigant" By: United States Courts Library says: Complaint is "The document that a plaintiff files with the Clerk of the Court to initiate a lawsuit. It contains a clear statement of the important information about the claims of the plaintiff and identifies the defendants. The following is the Complaint submitted by Steven L. Reed:

In construing claims of violation of the federal constitution, all state and federal courts are obliged by the Supremacy Clause to comply with the decisions of the US Supreme Court. Not even the Congress can overrule Supreme Court decisions interpreting the Constitution. (*Dickerson v. US*)

> The Fifth Amendment, applicable only to the federal government, includes a provision that *"No person shall... be deprived of life, liberty, or property, without due process of law."* To address the recalcitrance of some of the former Confederate states, a similar due process clause was included in the Fourteenth Amendment. This clause applies directly to the states, by its express wording: *"No state shall... deprive any person of life, liberty, or property, without due process of law."*

*STANDING AND PARTIES NEEDS CORRECTIONS DONE 9-19-19\*\*\**

## STANDING

Steven L. Reed has STANDING to bring this Cause of Action.

Steven L. Reed hereby states a controversy between the parties exist and that he has standing to bring this cause of action.

A. Steven L. Reed is a Citizen of the United States and the State of Missouri.

B. Steven L. Reed lives under two contacts that spell out rights of the People including Reed which includes freedom of speech and the right of the People to effect governmental functioning.

C. "An equal protection claim arises when, without adequate justification, a governmental entity treats similarly situated people differently." Plaintiff Steven L. Reed plans to show under discovery that members of several groups were allowed Pro Vote and others to gather petition signatures and were not bothered by MSU staff at all.

D. A municipality may be liable under section 1983 if its policy or custom caused a constitutional injury. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993); Reyna, 944 S.W.2d at 660. Missouri State University can be held liable if it can be shown that the security guard was told to harass Reed and that discovery shows others were involved or dereliction of duty and care of duty either because of incompetence or because of being told by superiors to do so.

E. NOTICE OF WHISTLE-BLOWER STEVEN L. REED REQUEST: NOTICE SENT TO USA DOJ TO LOOK AT AND INCORPORATED HEREBY IN INSTANT CASE:

STEVEN L. REED HEREBY DECLARE HE IS A WHISTLEBLOWER CONCERNING THE INSTANT CASE AND THE HEREBY MENTIONED CASES....A whistleblower is a person who exposes any kind of information or activity that is deemed illegal, unethical, or not correct within an organization that is either private or public. ... Because of this, a number of laws exist to protect whistleblowers.

NOTICE: Steven L. Reed has not received any SUBSTAINTAL JUSTICE for several cases and matters hereby submitted show no resolution of mistreatment of Steven L. Reed have happened.

The Federal Court and City of Springfield along with Missouri State University all have long history with Steven L. Reed.

1. 1996 Steven L. Reed was detained and ticketed by Springfield Police for handing out minimum wage literature,. The Judge Nancy Raymeyer the case out and said she knew it was campaigning. The City of Springfield placed Steven L. Reed on a year

probation anyway. Steven L. Reed thereby had a record which effected job prospects in 1996.

2. 2000 Steven L. Reed was Arrested in fall of 2000 (and taken to jail while doing **Volunteer Motor Voter Registration Drive** when US Senator---**Vice President Candidate Joseph Lieberman** was at Missouri State University **PLACED ON A YEAR PROBATION Steven Reed was setting up table in free speech area to do volunteer voter registration when Police Officer said no he was not going to do that and Reed was taken to jail.**

**Missouri State University has had a history from then forward of** *bullying, harassing, intimidation, threats and humiliation that has created mental distress for Reed.*

3. 2003 Steven L. Reed 2000 Steven L. Reed was Arrested while handing out Draft Claire McCaskill literature at Jackson Days and detained for a long period of time. Federal Judge Sarah W. Hays in a case concerning the matter ruled against Steven L. Reed on every motion. Judge Sarah W. Hayes answered a call to the Court Office and yelled I was not supposed to talk to her. She should have recused off the case and the case needs to be reopened. Steven L. Reed completed and submitted to the Court a deposition of Mike Schilling who now serves on Springfield City Council in Missouri and he said the City and the Police mistreated Steven L. Reed and should have to pay.

City of Springfield. Missouri Attorney Thomas Edwards Rykowski demanded Steven L. Reed disclose who gave him a copy of the following document and yelled Reed had to turn over and then he called Rod Roberson who is deceased and he demanded and threatened he explain how he received the document.

**(Exhibit Number 9.) Memo to Gordon Loveland Chief of Police from Lyndel Porterfield Assistant City Attorney:**

**Page 1.**

*If the situation is not clear-cut, and if an arrest is made when the picketer is validly exercising his rights of free speech, then we are exposing the City and the officer to lawsuits charging violations of basic constitutional freedoms....*

*Our department will work as closely as possible with the Police Department to try and take the guesswork out of the field situation and therefore make the police officer's job less risky. Above all, the officer should not "guess" about an arrest....the results can be shattering. If the officer is in doubt....he should contact the prosecutor or refer the manager of the business to the prosecutor's office.....*

*Page 2.*

*2. If the officer decides that the activity clearly does __not__ violate an ordinance, and if the manager still insist upon some action being taken, then the officer can refer the manager to the manager's attorney or to the prosecutor.*

4. Steven L. Reed was detained with the threat of arrest at a Missouri Career Center by a police officer Thomas Hicks who did not have car video or personal video on as required bt the city and federal rules. A retired law officer said no recording device means Steven L. reed should have won the case. Instead, Federal Judge Brian C. Wimes took over in a federal case that Judge Ricard Dorr passed away. Judge Brian Curtis Wimes is a United States District Judge of the United States District Court for the Eastern District of Missouri and United States District Court for the Western District of Missouri. Despite his dual appointment, Wimes maintains chambers only in the Western District of Missouri. Steven L. Reed had contact with Steven L. Reed and should have recused himself. Instead within a short period of time, he threw the case out. The case had 500 motions and five years there was no way the Judge had time to reasonably review the case. The case needs to be reopened.

## PARTIES

**3. Steven L. Reed, A United States Born Citizen who resides in Springfield, Missouri ...**STEVEN L. REED HEREBY DECLARE HE IS A WHISTLEBLOWER CONCERNING THE INSTANT CASE **who has done mainly volunteer community projects for 28 years with a partial list being:**

Partial List

**1989** Reeds Spring Restoration – Reed helped implement Citywide cleaning, painting, and improvements,

**1993** sent letters to all State Representatives and State Senators requesting that Highway 65 between Springfield and Branson be completed ahead of Ozark Mountain Highroad. Reed received several letters back stating that they understood people were being killed on narrow highway 65 and it should be completed first. The 4-laning of highway 65 was not in the state's 10-year plan. The project was then placed as the top priority of the state transportation project list. 1993 ---

**1992-93** Hollister School Bond Issue – Reed helped campaign for and helped pass a 2.5 million dollar bond, 1992 – 93 --- I worked with Into the Streets - Tree America – Christian Action Ministries.

**1996** --- Reed registered over 15,000 + people to vote VIA Missouri-Operation Spread Democracy. Plaintiff Steven Reed claims to have registered over 15 ---Reed was a member of Vision 20/20 participating thousand voters more than anyone "in the world".

**1995 – 97**  Reed helped in the planning of Springfield including concerns related to

transportation, parks, regional planning, and historical preservation concerns. My efforts were mainly associated with transportation and environmental concerns.


**1995 - 98** --- Reed was a member of the Community Task Force - A member of the Economic Group. CTF is a volunteer organization which creates pathways to raise the standards of living and quality of life for all inhabitants present and future, in Springfield and the surrounding areas. CTF is funded by the City of Springfield, MO Social Services,
and the United Way.


**1988** – Present --- Reed worked on getting Rail Passenger Service and have worked on promoting and securing a grant to study the impact of bringing back rail passenger service to southwest Missouri. This included letter-writing campaigns in which citizens sent hundreds of letters of support to government and transportation officials. Mayors of five towns including Hollister, Branson, Galena, Crane, and Reeds Spring sent letters of support. I Worked with College of the Ozarks to try and secure a study grant.


**1998** --- Steven Reed ran for Nixa Alderman and received over 170 votes 49% and he campaigned on and developed support for building a swimming pool and Community Building which they did build a few years later.


**1998** --- Steven L. Reed received 18,000 Votes for Ozark Technical College Trustee's Position in April.   One of the issues I promoted was an Ozark Branch of this college which was decided on afterwards. On November 9, 2006, Ozarks Technical Community College's Richwood Valley campus near Ozark and Nixa opened. The new 59,000 square foot facility on Missouri highway 14 cost about 10.5 million.


**1998**  Steven Reed talked with Mr. Greg Williams who was in charge of business and economic development and he yelled on the phone that if we bring in a technology park it would collapse the economy because of higher wages.   Reed's main argument is the City has spent over 10 million dollars on the two industrial parks why not change both or one by name and it could help attract new companies.   Mr. Williams left the chamber a few years back.


**Ozark Speed Limit** --- Reed helped get city limits of Ozark out to W highway to get the speed limit lowered 10 mph in area nice was killed since people were entering the city limits at over 55 m.p.h.

**City of Springfield Audit** Steven Reed started the Audit Petition in Springfield Missouri in 2000. The Audit was turned in 6 years later.

**TEAMSTER JOBS** Steven Reed secured over 1,500 signatures that were turned over to the National Labor Relations Board in Kansas City to help save around 5,000 Associated Grocer Teamster Jobs in southwest Missouri area mainly the Springfield region.

**2002 Reed Submitted** over 5,000 Petition Signatures on a statewide approved petition.

**2000** Steven Reed had Rail and the Technology Park issues approved to circulate statewide. Steven Reed has **attended** at least two Missouri Department of Transportation State Meetings. Steven Reed **attended** at least one Statewide Economic Development meeting at Tan Tar.

**State Audit Springfield**--- Steven Reed started the Springfield Audit in 2000 which was finished in 2006. Steven Reed requested and received the original audit petition from the State Auditor and began getting signatures.

Graduated with a Political Science degree from College of the Ozarks in 1993 with a Political Science degree. Took many pre-law classes including two constitutional law and 10 economic courses and presently finishing a Paralegal Degree at Drury University. Graduated with Paralegal Degree Drury University 2018.

**5. Cliff Smart is President of Missouri State University which is public owner and financed by the taxpayers of the state of Missouri and the Federal Government by way of Pell Grants received by students who attend Missouri State University and "Security Guard in Exhibit #3. video is employed by Missouri State University" which are responsible for UPHOLDING STATE AND FEDERAL CONSTITUTIONS I.E. THE LAW OF THE LAND AND THAT THE AMENDMENTS SUCH FORTH THAT CONCERN THE RIGHTS OF THE CITIZENS IN SUCH CONTRACT BY THE GOVERNMENT WITH THE PEOPLE AND THE RESPONSIBILITY OF THE GOVERNMENT TO ADHERE TO THOSE RIGHTS AT ALL TIMES. The Missouri State University Board of Governors being the boss of Cliff Smart have a responsibility to oversee the operations of the University and can in no way shirk that responsibility.**

**6. Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of**

Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals: Other defendants Jane Does, and other John Does who acted in conspiracy with one or more defendants to violate plaintiff's rights by demanding he stop his actions of free speech with the threat of his arrest and punishment. Discovery will add possible additional names under jane and john does.

## STATEMENT OF THE CLAIM (FACTS)

*Summary of the Issues*

7. *"THE FIRST AMENDMENT: CONGRESS SHALL MAKE NO LAW RESPECTING AN ESTABLISHMENT OF RELIGION, OR PROHIBITING THE FREE EXERCISE THEREOF, OR ABRIDGING THE FREEDOM OF SPEECH, OR THE PRESS, OR THE RIGHT OF THE PEOPLE PEACEFULLY TO ASSEMBLE, AND TO PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCES.*

*Courts have interpreted the First Amendment to limit states, local governments, and others who act as agents or representatives of the government.*

The Rule of Law concerning his Constitutional Rights forms the basis of the lawsuit and the following facts support the Rule of Law as set out in the Constitution including "Freedom of Speech" and "Public Access" and the "Right of Citizens to effect Governmental Functioning". The following Claim sets out why Missouri State University has had a pattern of bullying, harassing, intimidation, threats, and humiliation that has created mental distress for Reed starting with Cliff Davis then a vice president at SMSU Missouri State University calling the police in 2000 because Plaintiff Steven L. Reed was registering voters on the college campus of MSU.

THE FOLLOWING CLAIM sets out why Defendant Security Guard J and his superiors including Missouri State University President Cliff Smart, Missouri State University Board of Governors, Governor of Missouri, Missouri State University Security Guard and Guards, and other John and Jane Does, MSU President Cliff Smart and the University Board of Governors and college staff and vice presidents and staff of the MSU library violated the RULE OF LAW and he (SECURITY GUARD AND OTHERS HEREBY NAMED), owed Steven Reed a "DUTY OF CARE" and MSU Security Guard "Breached that Duty" and Security Guard's Negligence caused Steven Reed to suffer injuries and other damages as spelled out in the following Complaint and CAUSE OF ACTION.

Discovery will aid in the finding of what levels of damages the following parties Missouri State University President Cliff Smart, Missouri State University Board of Governors, Governor of Missouri, Missouri State Security Guard, other John and Jane Does inflict on Steven L. Reed.

8. STEVEN L. REED hereby files a 42 U.S.C. § 1983 Complaint against his superiors and college staff and vice presidents at the MSU any other John or Jane Doe officials..........alleging violations of the First Amendment and 14 AMENDMENTS to the United States and Missouri Constitutions and hereby request and/or demands a jury trial. All the following pleadings are aimed at doing substantial justice. A police force should be the first to act not only within the letter of the law, but the spirit as well, lest the population think that they are bigger criminals than the private crooks acting lawlessly on their own private behalf, as opposed to under the color of law.

## COUNT ONE: CONSEQUENCES OF UNCONSTITUTIONAL INVESTIGATION

**1.** Law enforcement officers swear or affirm to bear true faith and allegiance to the Constitution. And *"...police officers are expected to obey the law while enforcing the law."* (*Spano v. New York*) Conducting criminal investigations in a constitutional manner is, therefore, a matter of basic *duty* for all peace officers. **Missouri State University President Cliff Smart, Missouri State University Board of Governors, Governor of Missouri, Missouri State University Security Guards, and other John and Jane Does have a duty to obey the law when dealing with citizens with heightened responsibilities when a citizen is being political or working on community issues as protected constitutional rights.**

But there are additional **reasons why these officials must know and follow the constitutional rules** while investigating criminal activity. **Unconstitutional acts can have serious consequences** for the prosecution of a case**, can subject the officer and his or her agency to potential civil liability**, and can even result in the criminal prosecution of the offending officer. Avoidance of these negative consequences and adherence to the basic duty of obedience to the Constitution will require officers and their supervisors to have up-to-date working knowledge of existing decisional law and to stay abreast of changes that occur with each yearly term of the Supreme Court.

As noted, the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments place limits on investigative and prosecutorial powers, and extend certain protections to criminal suspects and defendants. And what gives the federal constitution its overriding authority is the "Supremacy Clause," set forth in Article VI, Section 2:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or laws of any state

notwithstanding." The Supremacy Clause makes the Constitution the final authority

on any matters covered by it.

*http://www.lawtechpublishing.com/sampleChapters/ICL.pdf*

## IMBLER v. PACHTMAN, 424 U.S. 409 (1976)

**424 U.S. 409** We emphasize that the immunity of prosecutors from [424 U.S. 409, 429] liability in suits under 1983 does not leave the public powerless to deter misconduct or to punish that which occurs. This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful deprivations of constitutional rights on the strength of 18 U.S.C. 242, 28 the criminal analog of 1983. O'Shea v. Littleton, 414 U.S. 488, 503 (1974); cf. Gravel v. United States, 408 U.S. 606, 627 (1972). The prosecutor would fare no better for his willful acts. 29 Moreover, a prosecutor stands perhaps unique, among officials whose acts could deprive persons of constitutional rights, in his amenability to professional discipline by an association of his peers. 30 These checks undermine the argument that the imposition of civil liability is the only way to ensure that prosecutors are mindful of the constitutional rights of persons accused of a crime. [424 U.S. 409, 430]

It remains to delineate the boundaries of our holding. As noted, supra, at 416, the Court of Appeals emphasized that each of respondent's challenged activities was an "integral part of the judicial process." 500 F.2d, at 1302. The purpose of the Court of Appeals' focus upon the functional nature of the activities rather than respondent's status was to distinguish and leave standing those cases, in its Circuit and in some others, which hold that a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's. 31 See Pierson v. Ray, 386 U.S., at 557 . We agree with the Court of Appeals that respondent's activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. 32 We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative [424 U.S. 409, 431] officer rather than that of advocate. 33 We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under 1983.

**Amanda Jean ODOM, Plaintiff-Appellee**, v. **WAYNE COUNTY** and City of Detroit, Defendants, Christine Kelly, Defendant-Appellant. Docket No. 133433

CONCLUSION V. The trial court erroneously determined that plaintiff's claims sounded in gross negligence and, therefore, analyzed defendant's motion for summary. Plaintiff disposition based on governmental immunity under MCL 691.1407(2). pleaded claims of intentional torts, and defendant was required to

establish that she was entitled to governmental immunity pursuant to Ross, as required by The trial court's analysis was erroneous because it focused MCL 691.1407(3). solely on the potential lack of probable cause to arrest and detain plaintiff, The Court of Appeals recognized that contrary to the requirements of Ross. plaintiff's claims sounded in intentional tort, but analyzed defendant's right On to immunity under subsection 2, which applies only to negligent torts. Remand, the trial court must determine whether defendant had a good-faith belief that she possessed probable cause to detain plaintiff before ruling on defendant's motion for summary disposition based on governmental immunity.

Because of the errors committed below, we vacate the trial court's order with respect to defendant, vacate the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this. We do not retain jurisdiction.

We concur in the result only.

### ii)        ". . . who under color of [state law]."

The traditional definition of acting under the color of state law requires that the defendant have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," and such actions may result in liability even if the defendant abuses the position given to him by the state. A private actor may also act under color of state law under certain circumstances. For example, it has been held that a physician who contracts with the state to provide medical care to inmates acts under color of state law. For all practical purposes, the "color of state law" requirement is identical to the "state action" prerequisite to constitutional liability.

### (iii)        ". . . subjects or causes to be subjected . . ."

**2.** Section 1983 does not impose a state of mind requirement independent of the underlying basis for liability, but there must be a causal connection between the defendant's actions and the harm that results.

**3.** A local government is said to have an unconstitutional policy when it fails to train its employees, <u>and the failure to train amounts to deliberate indifference to an obvious need for such training and the failure train will likely result in the employee making a wrong decision.</u> **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals.**

**4.** At fault for not making sure a thorough understanding of constitutional rights exist and especially at a state funded facility that is supposed to teach students the proper lawful actions of the people in a constitutional government such as that of the United States.

An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker," or if the authorized policymaker approves a subordinate's decision and the basis for it. However, a supervisor can only be liable in his individual capacity if he directly participates in causing the harm-- relying upon respondent superior is insufficient. The Supreme Court has rejected the notion that a plaintiff must meet a heightened pleading standard to state a claim against a municipality for an unconstitutional custom or policy.   Plaintiff Steven L. Reed states that a higher standard cannot exist for Missouri State University as it must adhere to the rights guaranteed in the United States Constitution which is a contract with the people.

### (iv) "... [any person to] the deprivation of rights ..."

Section 1983 is *not* itself a source of substantive rights, it merely provides a method for the vindication of rights elsewhere conferred in the United States Constitution and Laws. Therefore, a plaintiff may prevail only if he can demonstrate that he was deprived of rights secured by the United States Constitution or federal statutes.  It is beyond the scope of this article to discuss all of the rights available under the United States Constitution, nevertheless, this article will provide an overview of perhaps the most utilized of all constitutional provisions--the Fourteenth Amendment Due Process Clause [hereinafter "the Due Process Clause"].

**5.** The Supreme Court has held that the Due Process Clause was not intended to supplant tort law, or to become "a font of tort law to be superimposed upon whatever systems may already be administered by the states." Against this backdrop, to state a claim for a deprivation of Due Process, a plaintiff must show: (1) that he possessed a constitutionally protected property interest; and (2) that he was deprived of that interest without due process of law.  Due process property interests are created by "existing rules or understandings that stem from an independent source such as state law--rules or understanding that secure certain benefits and that support claims of entitlement to those benefits."  To have a property interest protected by the Due Process Clause, "a person must have more than an abstract need or desire for.

15

**6.** While the Plaintiff is not required to set out in detail the facts upon which the claim is based, he must either through direct allegations or inferences, state all the material elements for recovery under the relevant legal theory. Hicks v. Arthur, 843 F. Supp. 949, 954 (E.D. Pa. 1994) (citing Charles A. Wright and Arthur Miller, 5 Federal Practice and Procedure, § 1216 at 154-59 (1990). Federal Rule of Civil Procedure 15(a) This rule reflects two of the most important principles behind the federal rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated....and mere technicalities should not prevent cases from being decided on the merits." Monahan v. N.Y.C. Dept. of Corrections, 214 F. 3d 275

## COUNT 2: PLAINTIFF STEVEN L. REED SEEKS SUBSTANTIAL JUSTICE

**7.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1-6 above with the same force and effect as if herein set forth.

**8.** STEVEN L. REED hereby files a 42 U.S.C. § 1983 Complaint against *his superiors and college staff and vice presidents at the MSU* any other John or Jane Doe officials..........alleging violations of the First Amendment and 14 AMENDMENTS to the United States and Missouri Constitutions and hereby request and/or demands a jury trial. All the following pleadings are aimed at doing substantial justice. A police force should be the first to act not only within the letter of the law, but the spirit as well, lest the population think that they are bigger criminals than the private crooks acting lawlessly on their own private behalf, as opposed to under the color of law.

**9.** Missouri Security Guard was w Deliberately Indifferent to whether Reed knew what his constitutional rights were and whether Steven Reed was having his constitutional rights violated by telling him to leave.

**10.** Steven L. Reed hereby submits the legal theory is that as a question of law and question of fact and conclusion of law that MSU Security Guard was clearly was deliberately indifferent to whether Steven Reed knew what his constitutional rights were and whether Steven Reed was having his constitutional rights violated by telling him to leave and also MSU Security Guard implying he would arrest Reed if he did not leave right away and calling Springfield Police as a way of saying Reed was going to be arrested if he did not leave. The Security Guard acted as if no clue about what the law or his rights are.

## COUNT 3: COLOR OF LAW VIOLATIONS

**11.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 7-10 above with the same force and effect as if herein set forth.

**12.** <u>Section 1983 declares, Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, Discovery will show what level of guilt *Defendant Security Guard John Doe and his superiors including* MISSOURI STATE UNIVERSITY, AKA as</u> MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals including *<u>MSU President Cliff Smart and the University Board of Governors and college staff and vice presidents and staff of the MSU library</u>* ..........and Missouri State University President Cliff Smart, Missouri State University Board of Governors, Governor of Missouri, Missouri State University Security Guard, other John and Jane Does and Springfield Police Officer Officer J. Maththews #743 had and other state employees, and other Jane Does, and other John Does <u>each had in the Civil Constitutional Rights Violations.</u>

## <u>COUNT 4: VIOLATIONS OF STATE AND FEDERAL CONSTITUTIONS</u>

**13.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 11-12 above with the same force and effect as if herein set forth.

**14.** This Federal Court has Jurisdiction since Federal, State, and Local Taxpayer Money goes to the <u>Defendant Security Guard John Doe and his superiors including MSU President Cliff Smart and the University Board of Governors and college staff and vice presidents and staff of the MSU library</u> ......... <u>Violated State and Federal Laws spelled out in the State of Missouri and the United States Constitutions and known as rights of "Freedom of Speech"</u>........... Discovery will clarify what involvement and the level of guilt *<u>Defendant Security Guard John Doe and his superiors including MSU President Cliff Smart and the University Board of Governors and college staff and vice presidents and staff of the MSU library</u>* and MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals each have had in the Civil Rights Violations.

**15.** *<u>Steven Reed believes the Rule of Law concerning his Constitutional Rights forms the basis of the lawsuit and the following facts support the Rule of Law as set out in the Constitution including "Freedom of Speech" and "Public Access" and the "Right of Citizens to effect Governmental Functioning". The following Claim sets out why Defendant Missouri State University and their paid security guard violated</u>*

*the Rule of Law and he owed Steven Reed a "DUTY OF CARE" and Defendant Missouri State University and their paid security guard "Breached that Duty" and Defendant Missouri State University and their paid security guard Negligence caused Steven Reed to suffer injuries and other damages as spelled out in the following Complaint*

**16. STEVEN L. REED hereby files a 42 U.S.C. § 1983**
**Complaint** against MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals **alleging violations of the First Amendment and 14 Amendment to the United States and Missouri Constitutions** and hereby request and/or demands a jury trial. All the following pleadings are aimed at doing substantial justice. A police force should be the first to act not only within the letter of the law but the spirit as well, lest the population think that they are bigger criminals than the private crooks acting lawlessly on their own private behalf, as opposed to under the color of law.

**17. Defendant Security Guard and his superiors including MSU President Cliff Smart and the University Board of Governors and college staff and vice presidents and staff of the MSU library have a Legal Staff which should help inform and train members of employment by Missouri State University to make sure to protect the People's** Rights to Petition which is guaranteed by the Freedom of Speech Clause in the 1st Amendment to the Federal Constitution and is in the Missouri Constitution.

**18. *Missouri State University Security Guard and HIS BOSSES lack proper supervision and training to deal with the law concerning Citizens Rights under the Constitution and the Bill of Rights.***

**19. THE COURT IS ASKED TO ADDRESS WHETHER FEDERAL FUNDS SHOULD BE CUT FROM FUNDING MISSOURI STATE UNIVERSITY BY USE OF FEDERAL PELL GRANTS IF THEY MSU VICE PRESIDENTS, STAFF, LIBRARY STAFF AND SECURITY GUARDS IF THE ARE ALLOWED TO VIOLATE STATE AND FEDERAL CONSTITUTIONS.**

**COUNT 5: SMSU NOW KNOWN AS MSU COLLUDED WITH CITY OF SPRINGFIELD MISSOURI AND U.S. SENATOR ROY BLUNT TO STEAL TECHNOLOGY PARK ISSUE THAT MSU STUDENTS SUPPORTED**

20. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 13-19 above with the same force and effect as if herein set forth.

**21. Steven L. Reed turned in at a city council meeting over 3,000 signatures supporting the concept of creating a technology park in Springfield, Missouri. A**

number of MSU students had signed the petition. Rather than work with Steven L. Reed the City of Springfield colluded with MSU and Roy Blunt to start the Roy Blunt innovation center. They claimed it would create many new jobs. Yet it has created few. It is located in one building and most people not even know the innovation is there and is not what a large park with technology companies is about. Steven L. Reed received a letter for the city manager saying Reed should not work on an economic issue that he should instead support issues like the skate park.

**SEE EXHIBIT Number 4. Technology Park**

**SEE EXHIBIT Number 5. that shows MSU students supported Rail Passenger Service**

**22. MORE** Steven L. Reed worked for several years [on the effort to develop Rail Passenger Service between Springfield, Branson and other cities including St. Louis which would allow students to ride home for the weekend.

**COUNT 7: MSU HAS A LONG HISTORY OF ARREST AND INTIMIDATION WITH STEVEN L. REED**

**FACTS**

**23.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 20-22 above with the same force and effect as if herein set forth.

**24.** Steven L. Reed was Arrested in fall of 2000 (and taken to jail while doing **Volunteer Motor Voter Registration Drive** when US Senator---**Vice President Candidate Joseph Lieberman** was at Missouri State University **PLACED ON A YEAR PROBATION Steven Reed was setting up table in free speech area to do volunteer voter registration when Police Officer said no he was not going to do that and Reed was taken to jail. Steven L. Reed had to have a relative pay $100 to bail Reed out of jail and that arrest hurt Steven Reed employment options since a criminal arrest had been reported.**

**Missouri State University has had a history from then forward of *bullying, harassing, intimidation, threats and humiliation that has created mental distresss for Reed over a long period of time.***

**25.** Steven L. Reed list of mainly volunteer efforts show he has had a groundbreaking effect on opening up the flood gates allowing others to be politically active by doing voter registration drives, door to door and attending what Reed claims is more city council meeting than anyone in Springfield. MSU has had a history of not appreciating Reed's activities.

**26.** SMU newspaper **EXHIBIT NUMBER 1.** FREE SPEECH ZONES on the entire front page explains new state law and it was covered by state newsgroups and media. MSU President Cliff Smart and others including the Board of Governors had a responsibility to make sure all members of MSU paid staff were aware of the matter.

**27. EXHIBIT NUMBER 3.** The Actual EVENT AND EXHIBIT TWO VIDEO OF ENCOUNTER OF SECURITY GUARD WITH PLAINTIFF STEVEN L. REED. MSU Officials worked UNDER THE COLOR OF LAW to conspire together to violate Steven Reed's Constitutional Rights and Reed was a target anytime he comes on MSU Campus. **Reed explained to the security guard who said he really did not want to hear and did not care what Reed said he had to leave because petitioning would have to be done out at the street and that no petitioning is allowed on campus.**

**28. EXHIBIT NUMBER 1.** MISSOURI STATE LAW **SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI**

**29.** *Missouri State University personnel including security guards lacks proper supervision and training to deal with the law concerning Citizens Rights under the Constitution and the Bill of Rights.*

**30. THE COURT AND JURY IS/WILL BE ASKED TO ADDRESS WHETHER FEDERAL FUNDS SHOULD BE CUT FROM FUNDING PELL GRANTS TO MISSOURI STATE UNIVERSITY IF THEY ARE ALLOWED TO VIOLATE STATE AND FEDERAL CONSTITUTIONS?**

**31.** Security Guard was rude to Steven L. Reed showing his indifference to Reed's right to be at the library entrance at MSU.

**32.** Claiming it is MSU property and that there is no allowing petitioning is how the security guard put it. Plaintiff Steven L. Reed hereby claims that a lady or foreign person would not have been put through such intimidation, humiliation and mental stress.

**33.** Steven Reed told the security guard, (See EXHIBIT THREE), that it had been on the front page of the student paper that a law was passed that allows petitioning and that Reed would contact the President of the College about it. The security guard said he really does not care what Reed says about it he must leave. The security guard said he was calling the police which you can hear at the end of the video.

**34. EXHIBIT NUMBER 10. Shows the signature of a student who signed the petition at the entrance of MSU Meyer Library before Security Guard confronted and detained Steven L. Reed.**

**35.** Steven Reed had been run off several times over a number of years for petitioning at the library. Usually, security would show up in a half-hour to an

hour. In the case in the video Exhibit #3. Steven Reed believes the security guard was told to tell Steven Reed to leave no matter what Steven Reed says. Discovery will allow enough additional evidence for a JURY to decide what punitive damages are due.

**36. MSU HAS HAD SEVERAL (3-4) LARGE EMPLOYEES CHASE Steven L. Reed off-campus and YELL HE SHOULD NOT COME BACK. Discovery will bring this issue to light for a jury to hear.**

## COUNT 7: STEVEN L. REED REQUEST LEAVE OF COURT TO DECLARE THE CASE FALLS UNDER FIRST IMPRESSION

**37.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 23 thru 36 above with the same force and effect as if herein set forth.

**38.** Instant action falls under first impression. Steven Reed ask court latitude in deciding state law which the time was set at 1 year. This filing is being done within 3 years of incident and state law statutes of limitations usually allow a three year period to file cases. The reasons likely involve sometimes after an incident there is trauma and someone is upset and may not know if there is or is not a case and cause of action. Allowing enough time for a cooling down period to decide if there is enough violation of a party to ask for relief seems appropriate for this new law.

## COUNT 8: COLOR OF LAW VIOLATIONS

**38.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 37 thru 38 above with the same force and effect as if herein set forth.

**39. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** worked UNDER THE COLOR OF LAW to conspire together to violate Steven Reed's Constitutional Rights. Plaintiff Reed request judgment for the **DEPRIVATION OF RIGHTS** by Security Guard John Doe Number One severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 9: DELIBERATE INDIFFERENCE

**40.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 38 thru 39 above with the same force and effect as if herein set forth.

**41. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does had DELIBERATE INDIFFERENCE....**The conscious or reckless disregard of the consequences of one's acts or omissions. MSU SECURITY GUARD CLEARLY HAD A DELIBERATE INDIFFERENCE ABOUT WHATEVER STEVEN REED WAS SAYING ABOUT THE CONSTITUTIONAL RIGHT TO FREEDOM OF SPEECH, PETITIONING, AND EFFECTING GOVERNMENT.

**42.** Deliberate indifference is defined as requiring (1) an "awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "drawing of the inference." Elliott v. Jones, 2009 U.S. Dist. LEXIS 91125 (N.D. Fla. Sept. 1, 2009) AND MSU Security Guard knew that he was causing a violation of Steven Reed's Constitutional rights but he could care less what injury he did to Reed's Rights and mental state.  Mainly it is the attitude who cares about the constitution anyway many people feel it is close to being terminated anyway.  Because of Deliberate Indifference Steven Reed request severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of \$8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of \$2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 10:  MSU HAS HAD A PRIOR, REPEATED, PERSISTENT, AND HABITUAL, AND CONTINUED/SUSTAINING RECORD OF POLITICAL REPRESSION AND INTERFERENCE AND INJUSTICE AND PERSECUTION AGAINST STEVEN L. REED.  ALL EFFORTS WERE TO STOP STEVEN REED FROM PARTICIPATING AND EFFECTING GOVERNMENTAL ACTIONS AND FUNCTIONING WHICH IS THE MOST BASIC CONSTITUTIONAL RIGHT IN A "FREE COUNTRY" ALLOWED BY THE CONSTITUTION.

**43.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 40 thru 42 above with the same force and effect as if herein set forth.

**44. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals has a duty under rule of law to protect the rights spelled out in the state and federal constitutions.**

*The US Supreme Court has declared public sidewalks to be traditional public fora, given their long history as a locus of debate and expression.  United States v. Grace,*

*461 U.S. 171, 177 (1983). Although the public forum framework does not typically apply to private property, such as shopping malls, see Lloyd Corp. v. Tanner, 407 U.S. 551 (1972); Hudgens v. NLRB, 424 U.S. 507 (1975), the sidewalk in front of the License Center may still be categorized as a public forum. The Missouri Supreme Court has also recognized a right to engage in speech on public sidewalks. Ex parte Hunn, 207 S.W. 2d 468 (Mo. 1948).*

**45.** ARREST ON RECORD EFFECTING EMPLOYMENT EQUALS PUNITIVE DAMAGES.

**46.** Arrested in fall of 2000 and taken to jail while doing **Volunteer Motor Voter Registration Drive when** US Senator---**Vice President Candidate Joseph Lieberman** was at Missouri State University **PLACED ON A YEAR PROBATION Steven Reed was setting up table in free speech area to do volunteer voter registration when Police Officer said no he was not going to do that and Reed was taken to jail.**

**47. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** has had a repeated PRIOR, REPEATED, PERSISTENT, AND HABITUAL, AND CONTINUED/SUSTAINING Record of POLITICAL REPRESSION AND INTERFERENCE AND INJUSTICE AND PERSECUTION AGAINST STEVEN L. REED. ALL EFFORTS WERE TO STOP STEVEN REED FROM **PARTICIPATING AND EFFECTING GOVERNMENTAL ACTIONS AND FUNCTIONING WHICH IS THE MOST BASIC COSTITUTIONAL RIGHT IN A "FREE COUNTRY".**

**48.** A fundamental principle of democracy is public participation or citizen involvement in government which is what Steven Reed was doing. PETITIONING IS PARTICIPATION IN GOVERNMENTAL FUNCTIONING BY ALLOWING THE CITIZENS TO EFFECT GOVERNMENTAL ACTIONS. Encouragement of such participation is found in the First Amendment, which not only includes the right of free speech, but also the right to petition the government. These fundamental rights are at the core of our political system and permeate our laws, institutions, and lifestyles and protected by the 14th Amendment and US Constitution Sect.1 Sect. 5. Steven Reed request severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable because **MSU HAS HAD A PRIOR, REPEATED, PERSISTENT, AND HABITUAL, AND CONTINUED/SUSTAINING RECORD OF POLITICAL REPRESSION AND INTERFERENCE AND INJUSTICE AND PERSECUTION AGAINST STEVEN L. REED.**

## COUNT 11:  FIRST AMENDMENT

**49.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 43 thru 48 above with the same force and effect as if herein set forth.

**50.** The true indicia of a free society is the extent to which it allows for petitioning, dissent and openness of the government process. The First Amendment must protect everyone.

**51.** **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** and the State of Missouri Government is in violation of the law by stopping Reed from allowing his constitutional right to freedom of speech and the right to participate in influencing and participating in governmental functioning.

**52.** A.  14th Amendment concerning Equal Protection and Corresponding State Statute.

## COUNT 12:  PETITIONS MATTER

**53.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 49 thru 51 above with the same force and effect as if herein set forth.

**54.** Petitions are an extremely and <u>emphatically</u> necessity in a open and democratic society as a way for citizens to be able to participate and be involved in influencing and participating in governmental functioning.

**55.** A partial list of the forms of petitioning that are allowed/needed and afforded to the citizens are:

> A. Petition to:  place statewide issues on the Missouri ballot as per state law.

> B. Petition to:  place issues on a local city or county ballot as per state law and local charters.

> C. Petition to:  secure signatures to either be placed on a city council or school ballot as per state law.

> D. Petition to:  recall an elected official, Mayor of Lebanon, **(Exhibit Number 6.). FIND!!!!**

> E. Petitions relating to possible unionizing as per National Labor Relations Board.

F. Petitions concerning opposing and or in favor of a zoning issue per state and local laws.

G. Petitions concerning getting a government agency including state agencies audited as per laws administered by the state auditor.

H. Petitions in general for/or against an issue submitted to a governmental agency such as a city council, board of alderman, school board, U.S. Senator.

I. Article Petitions Help Citizens Form Laws **(Exhibit Number 7.). FIND!!!!**

Steven Reed is friends with an over 70-year-old lady Mary Andres who used to do petitioning on the square at the state building every two years. Steven Reed just talked with an April an intern in Senator Claire McCaskill's office on March 22, 2011, that said she organized an anti-war protest in front of the Federal Building in downtown Springfield a few years ago.

**56.** Plaintiff Steven L. Reed points out that the rights of the people are God-given and the

**57.** Citizen' ratified the Constitution to preserve those rights.

*Missouri Constitution*

**Article I**
**BILL OF RIGHTS**
**Section 1**

**August 28, 2010**

**Source of political power--origin, basis, and aim of government.**

Section 1. That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.

Source: Const. of 1875, Art. II, § 1.

*Missouri Constitution*

**Article I**
**BILL OF RIGHTS**
**Section 3**

**August 28, 2010**

**Powers of the people over internal affairs, constitution and form of government.**

Section 3. That the people of this state have the inherent, sole and exclusive right to regulate the internal government and police thereof and to alter and abolish their constitution and form of government whenever they may deem it necessary to their safety and happiness, provided such change be not repugnant to the Constitution of the United States.

Source: Const. of 1875, Art. II, § 2.

*Missouri Constitution*

**Article I**
**BILL OF RIGHTS**
**Section 9**

**August 28, 2010**

**Rights of peaceable assembly and petition.**

Section 9. That the people have the right peaceably to assemble for their common good, and to apply to those invested with the powers of government for a redress of grievances by petition or remonstrance.

Source: Const. of 1875, Art. II, § 29.

*Missouri Constitution*

**Article I**
**BILL OF RIGHTS**
**Section 25**

**August 28, 2010**

**Elections and right of suffrage.**

Section 25. That all elections shall be free and open; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

Source: Const. of 1875, Art. II, § 9.

(1964) In appeal from action to contest county school superintendent election, dicta contained in opinion stated that if § 167.020 were construed to prohibit write-in candidates it might be violative of this section and unconstitutional. Kasten v. Guth (Mo.), 375 S.W.2d 110.

Laura I spoke to this lady Marisa Compton she said the videos make it easy.

(1974) Statute requiring voter to make his ballot preference known to judge in primary election held not to violate this provision. State ex rel. McClellan v. Kirkpatrick (Mo.), 504 S.W.2d 83.

**58.** Plaintiff Steven L. Reed points out that the Attorney Generals website under

Court Process says:

> *A crime committed against a person violates state law and thus is a crime against the state. The prosecuting attorney for the county in which the crime occurred usually handles the case.....*

## COUNT 13:  FAILED RESPONSIBILITIES UNDER THE LAW

**58.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 53 thru 58 above with the same force and effect as if herein set forth.

**59.  A jury needs to allow a remedy to the FACT MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants:  Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals have failed their responsibilities.**

**1.  Duty.** The defendant must owe a legal duty to the victim.  A duty is a legally enforceable obligation to conform to a particular standard of conduct.  MSU has a duty when dealing with the Public including Steven Reed to uphold and enforce the Public's Constitutional and Human rights under the states, in this case, Missouri and Federal Constitutions.

**2.  Breach of duty.  MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants:  Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals.**

All Defendant of Missouri and MSU and John and Jane Does list as current or pending added Defendants are RESPONSIBLE/COMMITED CRIME BECAUSE OF telling Reed a blatant "shocking" thing as he must move to a city street...to tell citizens and would shock the major portion of the United States Citizens if/when they learn of this case.

**3. Causation.** The negligent act of all the Defendants was the proximate cause of the damages to the plaintiff which was a denial of public access and Plaintiff Steven Reed rights under the Constitution in **violation of the First Amendment and 14 Amendment to the United States and Missouri Constitutions**.

**4. Injury** **Injuries to Plaintiff Steven Reed includes the denial of his rights to political speech and to effect governmental functioning and emotional distress, embarrassment, and Dignitary Harms** (a person who holds a high rank or office, as in the government or church)the nature which was committed against Plaintiff Steven Reed) and Steven Reed. Some people have their first flare of psoriasis during a particularly stressful time.

**60.** The current Instant Case Is RIPE for a hearing of the Constitutional Questions of Law and Equality of the Citizens in the state according to Equal access and the 14th Amendment.

## TORT/COUNT NUMBER 14 VIOLATION OF: 42 U.S.C. § 1983: US CODE – SECTION 1983: CIVIL ACTION FOR DEPRIVATION OF RIGHTS AND BIAS AGAINST REED

**61.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs58 thru 60 above with the same force and effect as if herein set forth.

**62.** Under 1983 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**63. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** are all **causally responsible for constitutional injuries and show a deliberate indifference to the rights of Steven Reed**. The MSU Security Guard should have taken the time to seek Supervision input on the legality of the issues. Security Guard John Doe Number One RESPONSIBLE/COMMITED CRIME BECAUSE OF THE POSITION HE IS IN and Security Guard committed a crime by threatening and insisting REED leave and Security Guard did not check with his superiors. Being in such a threatening tone would be "shocking" thing to tell citizens and would shock the major portion of the United States Citizens if/when they learn of this case. **THE CITY OF SPRINGFIELD EMPLOYEES THE POLICE WHO HAVE A SUBSTATION AT MSU** and they have a responsibility to inform MSU security of changes to the law and did not do so concerning a law that can have an effect on all students and their right to petition and be involved in effecting public

discourse...FREE SPEECH ZONE ALL OF CAMPUS. Discovery will disclose further facts for the JURY to look over concerning what level and responsibility the City of Springfield, Missouri, and the Police Department has in the matter.

**64.** Steven Reed points out that participated under color of law, worked to violate Steven Reed's Constitutional Rights and make him leave under the threat of arrest since the Security Guard was calling the Police SEE **EXHIBIT NUMBER TWO The Actual EVENT AND EXHIBIT TWO VIDEO OF ENCOUNTER OF SECURITY GARD WITH PLAINTIFF STEVEN L. REED**.

**65.** Security Guard John Doe Number One actions caused: deprivation of many rights, privileges, or immunities secured by the Constitution and laws... which means the he committed: "Breach of PUBLIC TRUST/Contract" and clearly Security Guard John Doe Number One **understood or should have understood if trained properly --- in his capacity as servant of the people and so Failure, without Legal Excuse, to perform a duty required under a contract is a Breach of Contract and Breach of Duty in his official capacities** and as a representative of MSU and Damages should be awarded to punish Security Guard John Doe Number One who committed a wrongful act rather than to compensate an injured party for actual damages, exemplary damages and punitive damages to make sure the tort or torts do not occur again.

**66.** The actions of the Security Guard John Doe Number One which are fully incorporated herein, represent a breach of Defendants duties contained within their oaths of office to protect and defend the State of Missouri and the U.S. Constitution.

**67.** The actions of Security Guard John Doe Number One, as described herein, have denied and infringed upon the right to freedom of expression guaranteed to Steven Reed by the First and Fourteenth Amendments to the United States Constitution.

**68.** The actions of **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** as described herein, were taken under color of state law in direct violation of Plaintiff's constitutional rights and are therefore actionable under 42 U.S.C. § 1983. As a direct result of Defendants' actions, Plaintiff has suffered a direct and immediate violation of his constitutional rights and is therefore entitled to actual damages, exemplary damages and punitive damages and reasonable attorneys' fees, pursuant to **Federal Rules of Civil Procedure Page 7 of 7, 57, and 65 and 28 U.S.C. § 2201,** to redress and remedy the violation, and to prevent irreparable harm and future violations of her rights and the rights of others.

**69.** Steven Reed points to relevant cases and states that MSU is an arm of the state government:

**Monell v. Department of Social Services, 436 U.S. 658 (1978)**

In *Monell*, the Supreme Court found that local governments, and local government entities like the Department of Social Services, can be forced to pay money damages for any "custom or policy" it practices that injures an individual. The Court was interpreting the law known as § 1983 (quoted above), which allows individuals to sue for money damages if their rights under the Constitution have been violated by a government employee.

## City of Canton v. Harris, 489 U.S. 378 (1989)

In *Canton*, the Supreme Court decided whether a city could be liable for money damages for constitutional violations resulting from its failure to properly train its employees. In this particular case, Geraldine Harris sued the city for depriving her of her right, under the Due Process Clause of the 14th Amendment, to receive necessary medical attention while in police custody. She argued that the city failed to train police to assess when to provide medical attention to injured detainees.

**70.** The Court decided that a *"failure to train"* can be a basis for liability if the failure to train reflects the government's "deliberate" or "conscious" choice. If a city showed *deliberate indifference* to the constitutional rights of those who come into contact with its ill-trained employees, it could be forced to pay money damages to those who get injured.

**71.** WHEREFORE, As a direct result of Defendant's actions, the Steven Reed has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive Relief and damages, to redress and remedy of the violations, and to prevent irreparable harm and future violations of his rights and the rights of others. **Security Guard John Doe Number One understood or should have understood if trained properly --- in his capacity as servant of the people he has sworn to an oath to uphold the State of Missouri and Federal Constitutions and so Failure, without legal excuse, to perform a duty required under a contract is a Breach of Contract and Breach of Duty in his official capacities** Plaintiff Reed request judgment for the **DEPRIVATION OF RIGHTS** by Security Guard John Doe Number One severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT/TORT 15: VIOLATIONS OF U.S.C. 1983, 1985,1986, 1988: THREAT OF ARREST, IMPRISONMENT, KIDNAPING, AND HARASSMENT

**72.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 61-71 above with the same force and effect as if herein set forth.

**73.** Text of Section 1 of the Fourteenth Amendment to the United States Constitution:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws

**74.** At all times relevant herein, the conduct of Defendant Security Guard was subject to 42 U.S.C. secs. 1983, 1985, 1986, and 1988 **and** other Jane Does, and other John Does and The City of Springfield Police and MSU Security Guard, ……denied Reed of both his right to liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

**75. Acting under the color of law, all Defendants MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals as alleged, worked a denial of Plaintiff's rights, privileges or immunities secured by the United States Constitution and Missouri Law and Constitution and City Ordinance and Federal law. (a) by depriving Plaintiff of his liberty without due process of law by stopping Mr. Reed against his will of doing what the Constitution allows. County of Sacramento v. Lewis 523 U.S. 833 (1998); Youngberg v. Romeo, 457 U.S. 307, 315 (1982);(b) by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Steven Reed equal protection of laws, (c) by refusing or neglecting to prevent such deprivations and denials to plaintiff, thereby depriving plaintiff of his rights, privileges, and immunities as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979).**

**76.** As a result of his concerted and unlawful and malicious, (3. (Law) With wicked or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse; as, a malicious act. [1913 Webster] ) treatment by Defendant MSU Security Guard, Steven Reed was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteen Amendments of the Constitution of the United States and 42 U.S.C. sec.. MSU Security Guard **failed to follow rules of conduct set forth by the city attorney in a memo to the chief of police of how to properly handle civil rights and freedom of speech issues. TITLE 18 – CRIMES AND CRIMINAL PROCEDURE**

**(5) any citizen because he is or has been, or in order to intimidate such citizen or any other citizen from lawfully aiding or encouraging other persons to participate,**

**without discrimination on account of race, color, religion or national origin, in any of the benefits or activities described in sub-paragraphs (1) (A) through (1) (E) or sub-paragraphs (2)(A) through (2)(F), or participating lawfully in speech or peaceful assembly opposing any denial of the opportunity to so participate---shall be fined under this title, or imprisoned not more than one year or both.**

**A. Acquiescence, Collusion and Neglect of MSU Attorneys to temper Police Activities that Violated Steven Reed's Rights under the US Constitution, Missouri and City Laws.**

77. In <u>Monroe</u>, the Supreme Court held that a police officer was acting "under color of state law" even though his actions *violated* state law. This was the first case in which the Supreme Court allowed liability to attach where a government official acted outside the scope of the authority granted to him by state law. Since <u>Monroe v. Pape</u> was decided, an extensive body of law has developed to govern section 1983 claims.

59. (iii) "... subjects or causes to be subjected ..."

A local government is said to have an unconstitutional policy when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training and the failure train will likely result in the employee making a wrong decision. An unconstitutional policy may also exist if an isolated action of a government employee is dictated by a "final policymaker, or if the authorized policymaker approves a subordinate's decision and the basis for it. The Supreme Court has rejected the notion that a plaintiff must meet a heightened pleading standard to state a claim against a municipality for an unconstitutional custom or policy.

78. (iv) "... [any person to] the deprivation of rights ..."

(v) " ... shall be liable ... in an action at law, Suit in equity, or other proper proceedings for redress ... " With respect to the extent of damages available, the Supreme Court has noted that the basic purpose of a section 1983 damages award is to <u>compensate the victims of official misconduct, and therefore held that there is no limit on actual damages if they can be proven.</u> Further, state law sovereign immunity and state law limitations on damages do not protect local governments from liability under section 1983, and state laws requiring pre-suit notification prior to initiating an action against the state or its subdivisions similarly do not apply. **MSU Security Guard John Doe Number One** should have taken the time to seek Supervision input on the legality of the issues. <u>MSU Security Guard</u>/COMMITED CRIME BECAUSE OF THE POSITION HE IS IN and <u>MSU Security Guard</u> committed a crime by threatening arrest by saying "<u>he will bring in the police</u>" even though there were no

signs posted on the building or around the entrance and he did not check with his superiors and proceeded to tell Steven Reed if he did not leave he would be arrested which was a blatant "shocking" thing to tell a citizens and would shock the major portion of the United States Citizens if/when they learn of this case.

WHEREFORE, As a direct result of MSU Security Guard actions, Steven Reed has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive relief, declaratory relief, and damages, to redress and remedy of the violations, and to prevent irreparable harm and future violations of his rights and the rights of others. Steven Reed demands judgment for the threatened arrest, jailing, and kidnapping. Defendants threatening of Steven Reed and the denial of his Constitutional rights of Freedom of Speech Defendants. Steven Reed demands a Jury decide the Facts and any judgment against all the Defendants including MSU Security Guard and John and Jane Does severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable. "Punitive damages are recoverable in sec. 1983 suit where the defendant's conduct is motivated by an evil motive or intent, or where it involves reckless or callous indifference to the plaintiff's federally protected rights". Smith v. Wade, 461 U.S. 30,50-51 (1983). Money damages are available for the loss of property rights and for violations of civil rights done "under color of law".

## COUNT 16 VIOLATIONS OF 42 U.S.C. 1983: DETENTION

**79.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 72-78 above with the same force and effect as if herein set forth.

**80.** Detention: The act of detaining or keeping back; a withholding. [1913 Webster]2. The state of being detained (stopped or hindered); delay from necessity. [1913 Webster]3. Confinement; restraint; custody. [1913 Webster]. Defendants Cruse and Officer Hicks with help from all other Defendants stopped and hindered Reed from practicing his Constitutional Rights which were Violations of 42 U.S.C. Detention and Constitutional Torts.

**81.** As a result of their unlawful detention and confinement and subsequent forcing of Steven Reed under the threat of kidnapping or arrest and transport to jail to quit his protected "Freedom of Speech Right to Petition", Defendant MSU Security Guard deprived Plaintiff Steven Reed of both his right to his liberty without due process of law and his right to equal protection of the laws, the rights of political association and the due course of justice was impeded, (trampled), in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

**82.** As a direct result of Defendant MSU Security Guard **John Doe #1** actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is

therefore entitled to Punitive relief, and damages, pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. § 2201; and to redress and remedy of the violations, and to prevent irreparable harm and future violations of his rights and the rights of others.

WHEREFORE, As a direct result of Defendant Hicks actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages, to redress and remedy of the violations, and to prevent irreparable harm and future violations of his rights and the rights of others. Steven Reed demands judgment for the false DETENTION and confinement against all the Defendants severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 17 VIOLATIONS OF 42 U.S.C. 1983, 42 USC 1971ff: TORTS OF COERCION, INTIMIDATION, AND DEFAMATION

**83.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 79-82 above with the same force and effect as if herein set forth.

**84.** Steven Reed was placed on public display at the entrance to the Myers Library as a criminal all the while Reed was under the threat of kidnapping or arrest and transport to jail if he did not stop/quit his protected "Freedom of Speech", "Right to Petition" and the right to Free Political Association which was a violation of 42 U.S.C. 1983, 42 USC 1971ff: Coercion, Intimidation and Defamation and Constitutional Violations and Torts. Steven Reed was petitioning to place election issues on the ballot which is protected by the First Amendment to the United States Constitution under the clause of "Freedom of Speech and the Right to Petition for a Redress of Grievances.

**85.** Steven Reed believes this is **"A CONTROLLING QUESTION OF LAW"**....., Officer Hicks should have taken the time to seek Supervision input on the legality of the issues. MSU Security Guard IS RESPONSIBLE/COMMITED CRIME BECAUSE OF THE LAW ENFORCEMENT POSITION HE IS IN and MSU Security Guard committed a crime by threatening arrest even though there was no signs posted on the building or around the entrance and he did not check with his superiors and proceeded to tell Steven Reed if he did not leave he would be arrested which was a blatant "shocking" thing to tell a citizens and would shock the major portion of the United States Citizens if/when they learn of this case.

**86.** The effect as a result of Defendants concerted unlawful interfere with Steven Reed's individual's freedom of movement and Right to Freedom of Speech as allowed by the State of Missouri and the United States Constitutions, Steven Reed was placed on public display at the entrance to the Meyer Public Library as a criminal all the while

Reed was under the threat of kidnapping or arrest and transport to jail if he did not stop/quit his protected "Freedom of Speech", "Right to Petition".

**87.** Defendant <u>MSU Security</u> Guard through these coercive, intimidating and defaming actions deprived Steven Reed of both his right to liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

WHEREFORE, Steven Reed Demands Judgment for violations OF 42 U.S.C. 1983, 42 USC 1971ff: TORTS OF COERCION, INTIMIDATION DEFAMATION and Defendants acting together in a conspiracy. Steven Reed demands Punitive Damages, <u>actual damages, exemplary damages and punitive damages</u> against all the Defendants **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable. Money damages are available for the loss of property rights and for violations of civil rights done "under color of law".

## <u>COUNT 18 VIOLATIONS OF 42 U.S.C. 1983, 42 USC 1985: CONSPIRACY</u>

**88.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 83-87 above with the same force and effect as if herein set forth.

**89.** "In order to prove civil conspiracy, the plaintiff must establish that two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy and the plaintiff was thereby damaged". Steven Reed will find evidence in discovery that show Defendant **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** were involved in and conspired to deny Steven Reed his Constitutional Rights by working to stop REED from Petitioning."

**90.** The Tort of Defendants violating <u>42 U.S.C. 1983, 42 USC 1985: CONSPIRACY:</u> was and continues by Defendants **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University**

President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals and other Jane Does, and other John Does and Police Officer Hicks since all hereby named Defendants were involved in a conspiracy to "stop Steven Reed from performing his Constitutional Rights". Federal Issues and Constitutional Questions/ Torts apply to this case filed by Steven L. Reed since the <u>Missouri State University</u> is owned by the State of Missouri and receives Federal taxpayer money and performs a <u>PUBLIC FUNCTION and is a STATE ACTOR.</u>

**91. The <u>effort of</u> Defendants Tort was Defendants conspired together to and did "shut down Reed's Petitioning efforts that day and in the past.**

**Governor of Missouri, MSU Security Guard, and other John and Jane Does** was causally responsible for his constitutional injury to Steven L. Reed and showed a Deliberate Indifference on the part of Officer Hicks to the Rights of Reed. The violations of Steven Reed's Rights injury results are a natural, direct, uninterrupted consequence and without which the injury would not have occurred. Proximate cause is the primary cause of this Constitutional Injury.

We think it is clear that a damages action under § 812 is an action to enforce "legal rights" within the meaning of our Seventh Amendment decisions. *See, e.g., Ross v. Bernhard, supra,* at <u>396 U. S. 533</u>, <u>396 U. S. 542</u>; *Dairy Queen, Inc. v. Wood, supra,* at <u>369 U. S. 476</u>-477. **<u>A damages action under the statute sounds basically in tort -- the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach.</u>** As the Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law. Page 415 U. S. 196

**92.** <u>Governmental officials generally act under color of law because the state has given them the power to act; the link to the state is obvious.</u> When individuals do not work for the government, the under-color-of law inquiry still focuses on the connection between the challenged action and the government. The question becomes whether there is a sufficient link between the private individual and the state. The Supreme Court has articulated four related standards to determine whether there is a sufficient connection between the individual and the government such that the action by the individual nevertheless constitutes action by the government: joint actions, intertwined relationships, state encouragement, and public function. *Joint Actions* occur when the challenged action is committed by a person who does not work for the government; the under-color-of-law inquiry focuses on the nature of the connections between the private person and the state.

WHEREFORE, As a direct result of Defendant **MSU Security Guard, and other John and Jane Does** actions, the Plaintiff Steven Reed has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive Relief and damages and <u>actual damages, exemplary damages and punitive damages,</u> to redress and

remedy of the violations, and to prevent irreparable harm and future violations of his rights and the rights of others. Steven Reed demands judgment for **VIOLATIONS OF 42 U.S.C. 1983, 42 USC 1985: CONSPIRACY** against all the Defendants **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 19 VIOLATIONS OF 42 U.S.C. 1985: TORT WAS CONSPIRACY TO VIOLATE CIVIL AND POLITICAL RIGHTS INCLUDING ASSOCIATION

**93.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 88-92 above with the same force and effect as if herein set forth including

**94.** **Defendant MSU Security Guard and other John and Jane Does committed Torts in violation of 42 U.S.C. 1985 by conspiring to violate Reed's Civil and Political Rights by stopping petitioning. The conspiring Tort occurred with the meeting of the minds "under color of law" to deny Reed's Freedom of Speech and Civil and Political Rights.**

**95. The effect was Defendants denied Reed's** Rights to Petition which is guaranteed by the Freedom of Speech Clause in the 1st Amendment to the Federal Constitution and is echoed in the Missouri Constitution. The effect of Defendant MSU Security Guard actions was violating Steven Reed's civil rights to participate in the political process and to have public access to public buildings. Defendants stopped Steven Reed and any and all other citizens from getting signatures on petitions thereby stifling freedom of speech, and stifling Reed and citizens from being involved in effecting governmental functioning. **The City of Springfield is using Law Enforcement via Springfield Police to Violate the State and Federal Constitutional Rights of Steven Reed and anyone else whom may want to petition at Missouri State University such as he was doing...** REED WAS Arrested in fall of 2000 and taken to jail while doing a **Volunteer Motor Voter Registration Drive.**

**96.** Steven Reed was getting signatures on an election issue. The Missouri Secretary of State website explains the petitioning process which is pretty close to being the same in Missouri cities.

WHEREFORE, As a direct result of Defendant **MSU Security Guard, and other John and Jane Does** actions, the Steven Reed has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages, to redress and remedy of the violations. Steven Reed demands judgment for the CONSPIRACY TO VIOLATE CIVIL AND POLITICAL RIGHTS and confinement against all the Defendants **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8

Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 20 MALICIOUS PROSECUTION; INTENTIONAL TORT VIOLATIONS OF 42 U.S.C. 1983 REFUSING OR NEGLECTING TO PREVENT

**97.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 93-06 above with the same force and effect as if herein set forth.

**98. Defendant MSU Security Guard, and other John and Jane Does, (Neglected to prevent denial of Constitutional Rights), other Jane Does, and other John Does and The City of Springfield, Police Officer Hicks committed Torts including violating 42 U.S.C. 1983 and were in direct conflict with ruling of the United States Supreme Court by Refusing or Neglecting to Prevent the stopping and not allowing Steven Reed to petition on "Public Property" which is protected by the First Amendment and encouraged by the United States Supreme Court which said:**

**99. "We have recognized this right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights," Justice Sandra Day O'Connor wrote for the Court, "and have explained that the right is implied by the very idea of a government, republican in form." O'Connor further observed that the First Amendment petition clause says nothing about success in petitioning — "it speaks simply of the right of the people to petition the Government for a redress of grievances."**

**100. The effect was that at all times relevant to this Complaint, Defendant MSU Security Guard, and other John and Jane Does was acting under the direction and in joint control of Missouri State University and other John Does. Acting under color of law and pursuant to official policy or custom other Jane Does, and other John Does knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis and all parties failed in their duties by refraining from breaking the law by denying Plaintiff Reed his "Freedom of Speech" rights and refrain from threatening arrest of Steven Reed if he did not stop immediately:**

**Defendant MSU Security Guard, and other John and Jane Does are guilty of:**

**a.    unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities,**

b. unlawfully and maliciously threatening arrest and kidnapping, and threats of charging Plaintiff Reed with a crime and prosecuting him when Steven Reed was simply acting in accordance with his constitutional and statutory rights, privileges, and immunities,

c. conspiring to violate the rights, privileges, and immunities guaranteed to Steven Reed by the Constitution and laws of the United States and the laws of the State of Missouri; and City Codes,

d. otherwise depriving Plaintiff Reed of his constitutional and statutory rights, privileges, and immunities.

e. **MSU Security Guard and other John and Jane Does** should have taken the time to seek Supervision input on the legality of the issues. **MSU Security Guard, and other John and Jane Does** COMMITED POSSIBLE CRIME POSITION HE IS IN and Officer Thomas Hicks committed a crime by threatening arrest even though there was no signs posted on the building or around the entrance and he did not check with his superiors and proceeded to tell Steven Reed if he did not leave he would be arrested which was a blatant "shocking" thing to tell a citizens and would shock the major portion of the United States Citizens if/when they learn of this case.

**101.** All Defendants had knowledge or, had they diligently exercised that duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. Defendant MSU Security Guard, and other John and Jane Does and John and/or Jane Does had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

**102.** Defendants MSU Security Guard, and other John and Jane Does and other Jane Does, and other John Does directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants.

**103.** As a direct and proximate cause of the negligent intentional acts of the Defendants MSU Security Guard, and other John and Jane Does, Plaintiff suffered effects of severe stress and mental anguish, some physical personal injury inability to sleep and function, standing in the community in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. sec. 1983.

WHEREFORE, As a direct result of Defendant **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants:  Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University**

Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and Relief and damages, to redress and remedy of the violations. Steven Reed demands judgment for the **VIOLATIONS OF 42 U.S.C. 1983 REFUSING OR NEGLECTING TO PREVENT** and confinement against all the Defendants **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 21 MALICIOUS ABUSE OF PROCESS; VIOLATIONS OF 42 U.S.C. 1983: AND THE TORT OF MALICIOUS PROSECUTION

**104.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 97-103 above with the same force and effect as if herein set forth.

**105. Defendant MSU Security Guard, and other John and Jane Does Participated in the Torts** instituted implied criminal processes against Steven Reed with malice by telling him to Stop, Leave, or be Arrested in a Public Place, (stop his activity on a "PUBLIC SIDEWALK"), for simply carrying out his rights protected by the State and Federal Constitutions.

**106.** The threats, intimidation, and stated possible arrest and kidnapping of Steven Reed were not based on any probable cause, that is the state of the facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that Reed was guilty of trespassing in front of a "state-owned" building which allows "freedom of speech" from citizens to occur. Reed could not be guilty of trespassing on public property. If anyone was guilty of a crime it was **MSU Security Guard, and other John and Jane Does** threatening an arrest for trumped-up false claims and the fact that Defendant **MSU Security Guard, and other John and Jane Does** did not consult with the prosecutor before telling Plaintiff Reed that he would arrest him on the spot if Reed did not leave right away.

(a) It is unknown who all actually played an active part or indirect role in the initiation of the attempted criminal proceedings but certainly: **All Defendant MSU Security Guard, and other John and Jane Does played an active part in the initiation of the possible criminal proceedings;**

**(b) Leadership of the Police Department may have played an active part.**

(c) MSU Security Guard called Springfield Police asking them to come to the MSU library.

40

**(d)   All Defendants knew or should have known they all had a duty to ascertain whether there was reasonable and probable cause for a prosecution and the threat there of;**

(e)   Defendant **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants:  Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does  as discovery reveals** breached their duty;

(f)   Defendants and others unknown instigated or participated in the denial and threatened arrest of Plaintiff Reed for exercising his "First Amendment Rights"

**107.   OBSTRUCTION OF JUSTICE**--- Steven L. Reed was Arrested in fall of 2000 (and taken to jail while doing **Volunteer Motor Voter Registration Drive when US Senator---Vice President Candidate Joseph Lieberman** was at Missouri State University **PLACED ON A YEAR PROBATION  Steven Reed was setting up table in free speech area to do volunteer voter registration when Police Officer said no he was not going to do that and Reed was taken to jail.  Steven L. Reed had to have a relative go to jail and pay $100 to bail out of jail and arrest stayed on REED'S record effecting his employment negativity and costly yearly decreases in income.**

**Missouri State University has had a history from then forward of *bullying, harassing, intimidation, threats and humiliation that has created mental distress for Reed.***

**108.** STEVEN REED WILL SEEK IN DISCOVERY ANY AND ALL RECORDS THAT EXIST OF A CONSPIRACY AND COVER UP OF ALL PARTIES OVER THE DENIAL OF STEVEN L. REED'S RIGHTS.

**109.   WHICH MEANS THIS COURT HAS BEEN NOTIFIED OF OBSTRUCTION OF JUSTICE THAT NEEDS INVESTIGATED BY A GRAND JURY AND THE UNITED STATES JUSTICE DEPARTMENT.**

**110.** 18 U.S.C. **§ 1512 USCODE Section 1512:  Tampering with a witness, victim, or an informant:**

**(i)   withhold testimony, or withhold a record, document….**

**111.   All Defendants Et Al. Missouri State University President Cliff Smart, Missouri State University Board of Governors, Governor of Missouri, MSU Security Guard, and MSU Security Guard other Jane Does, and other John Does are believed to be liable under the doctrine of** *Respondent superior.*

**112.** "**Effect is** The Bill of Rights, Free Speech is a protected right for everyone. Most people don't realize that 200 years have passed since the First Amendment was ratified... and in those 200 years people have fought hard to make sure that when the boundaries of "free speech" evolve, the original intent of the Founding Fathers remains true...and **Steven Reed was denied and is still denied Free Speech allowed by the Bill of Rights".**

**A.  14th Amendment Equal Protection and Equal Access guaranteed to all United States Citizens was denied Steven Reed.**

**113.  The effect of the actions of all Defendants,** Et Al. **and MSU Security Guard is to Deny Steven Reed the RIGHTS that everyone is entitled to:**  Freedom of Speech is the right to freely express yourself - encompassing all types of expression, including the freedom to create and distribute movies, take photographs, paint, write songs, make up dances, dress how you want.  The new Missouri Law makes all **MSU Security Guard Actions were to Deny Steven Reed:**  The most basic component of freedom of expression is the right of freedom of speech. The right to freedom of speech allows individuals to express themselves without interference or constraint by the government. The Supreme Court requires the government to provide substantial justification for the interference with the right of free speech where it attempts to regulate the content of the speech.

WHEREFORE, As a direct result of Defendant **MSU Security Guard** actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages and damages, to redress and remedy of the violations.  Steven Reed demands judgment for the **VIOLATIONS OF 42 U.S.C. 1983:  and the TORT of MALICIOUS PROSECUTION** and confinement against all the Defendants **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

**COUNT 22: FALSE ARREST AND IMPRISONMENT;  MALICIOUS ABUSE OF PROCESS**

**114.** Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 104-113 above with the same force and effect as if herein set forth.

**Tort committed is:  Title 42 Chapter 21 at 1985 (3) Depriving persons of rights or privileges:**

**115.** Defendant MSU SECURITY GUARD maliciously used his authority positions to commit a Tort of stopping Steven Reed from his constitutional rights to petition and freedom of speech and Defendants maliciously used there authority positions to

accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed............**Defendants KNEW/OR SHOULD HAVE KNOWN that his actions of shutting down REED'S petition gathering and shutting down his right of freedom of speech and free political association and was a form of intimidation, coercion, and misrepresentation.**

**116. Defendant MSU SECURITY GUARD is liable under the doctrine of** *Respondent superior because "Doctrine of Respondent superior implies the responsibility of the superiors on the actions done by their employees or subordinates and thereby since MSU SECURITY GUARD did not contact the Police or Sergeant, Commanders, or Lieutenants he Contributed to the Liability of Respondent Superior for the loss of Steven Reed's Constitutional Rights.* ***SECURITY GUARD was calling Police to have Steven L. Reed Arrested.*** *SECURITY GUARD said REED would need to go to a public street like Grand Street. By denying Steven Reed's Constitutional Rights under the color of law committed a crime and must compensate his victim Steven Reed." MSU Security Guard should have been told of the state law being a free speech zone.*\*\*\*\*

**117.** Defendants **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals violated Title 42 Chapter 21 at 1985 (3) Depriving persons of rights or privileges: If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or equal privileges and immunity under the laws....the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.**

**118.** In... Horace E. RHODES, et al., Plaintiffs, v.CITY OF WICHITA, Kansas, et al., Defendants 516 F.Supp. 501 (1981) Civ. No. 77-1488.US D. Ct, Kansas made clear that Plaintiffs' claims against the **City** present a much closer question.....they are entitled to bring an action against the **City** directly under the Fourth and Fourteenth Amendments; they further contend that the traditional common law doctrine of *respondeat superior,* under which a master is liable for his servant's torts, is applicable in such an action...The Court noted that infringement of constitutional rights resulted in a personal right to a remedy. Furthermore, the court held that allowing a direct cause of action against the city served the additional policies of allowing for a more realistic opportunity to be made whole for the harm done and deterring future wrongdoings...The court denied the summary judgment motions of the police officers and city.

**119. The Effect of MSU SECURITY GUARD was he Conspired to interfere with civil rights (42 U.S.C. 1985(3).)** was committed by him and goal was to collide to stop Steven Reed from getting signatures and make sure he understood they are the authority figures whom decide such issues and that they themselves are the final word.

SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI Free Speech Zone

WHEREFORE, As a direct result of Defendant the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and Compensatory Relief and damages, to redress and remedy of the violations. Steven Reed demands judgment for the **MALICIOUS ABUSE OF PROCESS** and confinement against all the Defendants jointly and severally, for actual, general, special, and <u>actual damages, exemplary damages and punitive damages</u> in the amount of $100,000 and further demands judgment against each of said Defendants **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT/TORT 23 FALSE ARREST AND/OR THREAT OF; VIOLATION OF CIVIL RIGHTS ACTS of 1964 and 1968 AND AS AMENDED

**120.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 114 thru 119 above with the same force and effect as if herein set forth.

**121. Defendant MSU Security Guard and John and Jane Does committed the Tort of Violating** interfering with **CIVIL RIGHTS ACTS of 1964 and 1968 and All Defendants participated in a Conspiracy to violate civil rights. (42 U.S.C. 1985(3).)** TITLE 42 > CHAPTER 21 > SUBCHAPTER I > **§ 1985 Depriving persons of rights or privileges:**

**122.** or attempted to interfere by threats, intimidation, or coercion with Plaintiff's exercise and enjoyment of his rights—e.g., his rights to his liberty, his right to petition on public property and to urge others to participate in the political process; and his right to due process---secured by the state and federal constitutions or laws of the United States and/ or the State of Missouri. MSU Security Guard and **other Jane Does, and other John Does are believed to be liable under the doctrine of** *Respondent superior.*

**123.** The Effect was that at all times relevant herein, the conduct of Defendant MSU Security Guard and John Doe and Jane Does **was subject to the Civil Rights Acts of 1964 and 1968 and as Amended.  The Effect of what all Defendants did was** under color of state, Steven Reed's liberty was threatened, and he was intimidated and coerced into not engaging his right to "freedom of Speech and Petitioning in front of the MSU Library in Springfield, Missouri or otherwise take part in/or use of public accommodations that receives federal and state monies..

**124.** As a direct and proximate result and EFFECT of the Defendants, Steven Reed was intimidated and put in continuing anxiety and has suffered damages including but not limited to the aforesaid damages.  **All Defendants participated in a Conspiracy to violate civil rights. (42 U.S.C. 1985(3).)** TITLE 42 > CHAPTER 21 > SUBCHAPTER I > § 1985 **Depriving persons of rights or privileges:**

**125.  If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, ............whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. Missouri State University Security Guard** should have taken the time to seek Supervision input on the legality of the issues and IS RESPONSIBLE/COMMITED CRIME BECAUSE OF THE LAW ENFORCEMENT POSITION HE IS IN and MSU Security Guard committed a crime by threatening to arrest even though there was no signs posted on the building or around the entrance of library and he did not check with his superiors and proceeded to tell Steven Reed if he did not leave he would be arrested which was a blatant "shocking" thing to tell a citizens and would shock the major portion of the United States Citizens if/when they learn of this case.

WHEREFORE, As a direct result of Defendant's actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages, to redress and remedy of the violations.  Steven Reed demands judgment for the **VIOLATION OF CIVIL RIGHTS ACTS of 1964 and 1968 and as AMENDED** and confinement against all the Defendant MSU Security Guard **as discovery reveals** jointly and

severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT/TORT 24 FALSE ARREST AND/OR THREAT OF:

**126.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 120 thru 125 above with the same force and effect as if herein set forth.

**127.** Security Guard implied said he would arrest Steven Reed if he did not leave: STEVEN L. REED WAS BEING DETAINED.

**128.** In Serra v. Lappin, 600 F.3d 1191 (9th Cir. Cal. 2010), the court held that false imprisonment is the non-consensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. The essential elements of false imprisonment are willful detention, lack of consent, and absence of authority of law.

**129.** False imprisonment is often accompanied with force or threat of force, and a consent obtained by such force or threat of force is invalid. At common law, false imprisonment is recognized as a misdemeanor.

### 130. False Imprisonment and Civil Actions

**131.** In a civil action for false imprisonment, all persons who personally participate or cause an unlawful detention will be held liable. A civil action for false imprisonment can be invoked only if there is an unlawful restraint on freedom of movement or personal liberty of a person against his/her will. Likewise, persons other than those who actually cause an imprisonment can be held jointly liable with others, as instigators or participants in a civil action.

**132.** A tort of false imprisonment can also be committed by words, acts, or by both. To recover damages for false imprisonment, the plaintiff must establish that:

a. the defendant intended to confine the plaintiff;
b. the plaintiff was conscious of the confinement;
c. the plaintiff did not consent to the confinement; and
d. the confinement was not otherwise permitted.

In a suit for false imprisonment, the damages awarded will include compensation:

a. for bodily and mental suffering caused by the imprisonment

**133.** However, while awarding damages for a tort of false imprisonment the court shall take into consideration the following elements such as physical suffering, mental

suffering and humiliation, loss of time and interruption of business, reasonable and necessary expenses incurred, and injury to reputation.

### 134. False Imprisonment as a Crime

**135.** The general principles applied to false imprisonment as a crime and a tort are the same. The only difference being that principles applied in the criminal prosecution of false imprisonment are general laws of criminal jurisprudence. In order to constitute an offense of false imprisonment, a threat of force, a threat of arrest, and a belief that a person's personal liberty will be violated are sufficient. The elements that constitute the offense of false imprisonment are intention to confine a detainee within boundaries arranged by a defendant; total restraint of a detainee with no room for escape; detention against a detainee's will; detainee must be aware that s/he is confined illegally and s/he should not have consented to detention; unlawful restraint or confinement; actual restraint of a detainee's freedom of movement; and interference with a detainee's liberty.

**136.** MSU Security Guard made threats to Steven Reed of unlawful restraint and arrest upon his freedom of movement.

**137.** **MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals are believed to be liable under the doctrine of** *Respondent superior.*

**138.** <u>As a direct and proximate result of</u> the Defendants, Plaintiff Reed was intimidated and put in continuing anxiety and has suffered damages including but not limited to the afore said damages.

**139.** <u>Negligence</u> **was committed by MSU Security Guard who did not understand the Constitution and thereby acted like Steven Reed is mentally defective. THE ACTIVITY OF PETITIONING IS legal according to the USA and Missouri Constitutions.**

WHEREFORE, As a direct result of Defendant **MSU Security Guard** actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and<u> actual damages, exemplary damages and punitive damages</u>, to redress and remedy of the violations. Steven Reed demands judgment for the **<u>FALSE ARREST AND/OR THREAT OF</u>** confinement against MSU Security Guards **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 25: THREAT OF ASSAULT and BATTERY and DEFAMATION OF CHARACTER

**140.** Plaintiff Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 126 thru 139 above with the same force and effect as if herein set forth.

**141. Plaintiff Reed is a reasonable person who does not have a history of mental disease or afflictions, and does not have a history of criminal behavior.**

**142. When a person is presented any evidence that crimes have been committed they have a duty to see that the proper law enforcement are notified. If they do not that may become part of the conspiracy or considered to be aiding and abetting in the crime(s). *18 USC 18 § 4.* Misprision of felony. Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.**

**143. "FIRST IMPRESSION OF STATE LAW" OF SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI OF WHICH MANDATES ALL-STATE FUNDED INSTITUTIONS OF HIGHER LEARNING THAT ARE FUNDED IN PART BY THE STATE BE "FREE SPEECH ZONES" AND THIS INSTANT CASE CONCERNS IS FIRST TIME A CASE HAS BEEN FILED CONCERNING THIS LAW PASSED BY THE GOVERNOR AND MISSOURI STATE LEGISLATURE**

**144. MSU SECURITY GUARD did not contact superiors at all. Please see EXHIBIT # 4 Police Chief Memo from Gordon Loveland: Page 2. "If the officer is in doubt whether the conduct violates an ordinance, then he should refer the manager of the business to the prosecutor's office to file a complaint.**

**145. Missouri State University Security Guard sought to discredit and defame Plaintiff Reed by acting like he did not know what he was talking about in front of the public who were going in and out the Job Council.**

**146. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals are believed to be liable under the doctrine of *Respondent superior.***

WHEREFORE, As a direct result of Defendant MSU Security Guard actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages, to redress and remedy of the violations. Steven Reed demands judgment for

the **THREAT OF ASSAULT and BATTERY and DEFAMATION OF CHARACTER** against all the Defendants jointly and severally, for actual, general, special, compensatory damages further demands judgment against each of said **Missouri State University Security Guard** jointly and severally, for punitive **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 26 CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL CRUELTY

**147.** Plaintiff Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 140 thru 146 above with the same force and effect as if herein set forth.

**148.** Defendant MSU Security Guard, and other Jane Does, and other John Does intentionally and deliberately inflicted emotional distress on Steven Reed by maliciously, or by abusing the lawful process by unlawful purpose, or by conspiring against Plaintiff Reed, or by interfering with his state and federal civil rights by threats, coercion, or intimidation, or knew or should have known that emotional distress was the likely result of their conduct.

**149.** Defendant MSU Security Guard conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

**150.** The actions of the Defendants were the cause of Steven Reed's distress.

**151.** Plaintiff is a reasonable man.

**152.** The emotional distress sustained by Plaintiff knowing the Defendant MSU Security Guard was violating his rights along with the citizens' rights was/is severe and of a nature no reasonable man/person could be expected to endure.

**153.** As a result of the Defendants' extreme and outrageous conduct, Steven Reed was, is and, with a degree of likelihood, will continue to be emotionally distressed due to the **intentional exclusion and denial of rights. Intimidation is conduct reasonably calculated to put another in fear and the acts of the defendant must constitute intimidation to an ordinary, reasonable person. United States v. Bartolotta, 153 F. 3d 875 (1998).**

**154. Intentional infliction of emotional distress was caused** by Defendant MSU Security Guard because Steven Reed knows state and federal law requires citizens to have the right to petition in public places. The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3)

the conduct must be the cause (4) of severe emotional distress.  In all four causes it is clear Defendant MSU Security Guard stopped Steven Reed knowing it would cause him *MENTAL STRESS.*

155. Defendant Springfield  Police Officer Thomas Hicks, other Jane Does, and other John Does are believed to be liable under the doctrine of *Respondent superior.*

WHEREFORE, As a direct result of Defendant's actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and actual damages, exemplary damages and punitive damages, to redress and remedy of the violations.  Steven Reed demands judgment for the **CONSPIRACY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL CRUELTY** against all the Defendants including Defendant MSU Security Guard **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, actual damages, exemplary damages and punitive damages in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT 27:   THREAT  OF  FALSE  ARREST;   VIOLATION  OF  CIVIL RIGHTS ACTS of 1964 and 1968 and as AMENDED

139.   Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 147 thru 1 above with the same force and effect as if herein set forth.

140.  At all times relevant herein, the conduct of all Defendants (Violated), were subject to the Civil Rights Acts of 1964 and 1968 and as Amended.

141.  Defendant MSU Security Guard interfered with and/or attempted to interfere with by threats, intimidation, or coercion with Plaintiff's exercise and enjoyment of his rights-- e.g., his rights to his liberty, his right to petition on public property and violations of the First Amendment and his right to free speech.

142.  Thus, under color of state, Plaintiff Reed's liberty was threatened, and he was intimidated and coerced into stopping his efforts to petition on public property.

143.  As a direct and proximate result of the conduct of the MSU Security Guard, Plaintiff was intimidated and put in continuing anxiety and suffered damages including but not limited to the aforesaid damages.

144. Defendant MSU Security Guards, other Jane Does, and other John Does are liable under the doctrine of *Respondent superior.*

WHEREFORE, As a direct result of **Defendant MSU Security Guard** actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is

therefore entitled to Punitive and <u>actual damages, exemplary damages and punitive damages,</u> to redress and remedy of the violations. Steven Reed demands judgment for the <u>**VIOLATION OF CIVIL RIGHTS ACTS of 1964 and 1968 and as AMENDED**</u> against **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## <u>COUNT 28 ASSAULT AND BATTERY AND DEFAMATION OF CHARACTER AND THREAT OF FALSE ARREST AND ABUSE OF POWER</u>

**145.** Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 thru 144 above with the same force and effect as if herein set forth.

**146.** At all times herein, the **Defendant MSU Security Guard** acted with intention or threat of confining, (Threat of False Arrest), Steven Reed within fixed boundaries and/or arrest and taken to jail. Security Guard said "You can go petition out on the street." SEE VIDEO EXHIBIT SUPPLIED TO THIS COURT.

**147.** As a direct and proximate result of the conduct of the **Defendant MSU Security Guard**, Steven Reed was intimidated and put in continuing anxiety and suffered damages including but not limited to the aforesaid damages.

**148. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals are liable under the doctrine of** *Respondent superior.*

WHEREFORE, As a direct result of **Defendant MSU Security Guard**s actions, the Plaintiff has suffered direct and immediate violations of his constitutional rights and is therefore entitled to Punitive and <u>actual damages, exemplary damages and punitive damages,</u> to redress and remedy of the violations. Steven Reed demands judgment for the **COUNT/TORT of <u>THREAT OF FALSE ARREST</u>** against all the Defendants **as discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## <u>COUNT 29: TORT OF ASSAULT AND BATTERY AND DEFAMATION OF CHARACTER AND TORT OF NEGLIGENCE AND WILFUL DISREGARD OF LAW BY SECURITY GUARD</u>

149. Plaintiff Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 145 thru 148 above with the same force and effect as if herein set forth.

150. Steven Reed is a reasonable personable person, who does not have a history of mental disease or afflictions, was not drunk or under the influence of drugs during the times at issue in this complaint, and does not have a history of criminal behavior.

151. Defendants did not have probable cause to threaten Plaintiff Steven Reed with arrest for petitioning or abuse of his freedom of speech.

152. Defendants sought to discredit and defame Plaintiff in front of the MSU Library and the patrons visiting it.

## THESIS INTRODUCTION

**"The Legal Rule is from the Supreme Court that being the Rule of Law, no state shall…deny to any person within its jurisdiction the equal protection of the laws."**

153.  **MSU has denied Steven L. Reed the right to petition and his right to freedom of speech and the right of political association** and the right to register voters form 1996 until 2018 because of BIAS and Disdain and disapproval of Steven L. Reed's right to effect governmental functioning.   The Issue is the 14th amendment.   The Legal Rule is from the Supreme Court being the Rule of Law, "no state shall…deny to any person within its jurisdiction the equal protection of the laws." Legal Analysis is that the United States Supreme Court's conception of Liberty rest in large part under "Due Process" and the Court has expanded the rights to include "those rights that are essential to the ordinary pursuit of happiness by free men.", *Meyer v. Nebraska, 262 U.S. 390, 399 (1923)*

Southwest Missouri State University now known as Missouri State University has had a long history of Bias, Bullying and Harassment against Steven L. Reed and has used tax payer monies from federal pell grants to help fund those efforts.

154. **Steven L. Reed hereby sues under** …. Federal and State Constitutions Amendments….and new State Law, and the Equal Treatment Clause since Reed has been targeted because of his community action in the community… some say he helped clear the way for future activist.   Steven L. Reed hereby pleads a cause of action, the petition must state allegations of fact in support of each essential element of the cause pleaded which Steven L. Reed has set forth in this document.

**155.** This cause of action is as follows and concerns torts of <u>denying Freedom of Speech</u> in violation of Missouri Statute and the United States Constitution and under color of law denying right and freedoms guaranteed to the People in what we refer to as a free State and Nation and a Democracy based on free flow of ideas.

**156.** The Facts of the case are that Steven L. Reed has been know over a 20 year period as the main activist in southwest Missouri and helped the pave the way for others to be active. In the current action it was likely his arrest in 2000 by SMSU ---MSU that caused the Governor to pass the bill this case is brought under which is:

<u>**Senate Bill 93 of the State of Missouri with is EXHIBIT #3.**</u>

157. This action seeks damages of State Law and Punitive Damages as a result of hostile actions against Steven Reed over a 19 year period by SMSU and now known as MSU,

**158.** From: https://www.thefire.org/missouri-governor-signs-law-banning-campus-free-speech-zones/

Missouri Governor Signs Law Banning Campus 'Free Speech Zones'

July 15, 2015

JEFFERSON CITY, Mo., July 15, 2015—Yesterday, Missouri Governor Jay Nixon **signed** into law **Senate Bill 93**, the Campus Free Expression Act (CAFE Act), which prohibits public colleges and universities from restricting student speech to tiny, out-of-the-way "free speech zones." The Foundation for Individual Rights in Education (**FIRE**) worked with members of the legislature to ensure this important piece of legislation became law.

**159.** This **Cause of Action** is filed by Steven L. Reed and has jurisdiction in federal court because of the way Steven L. Reed was and has been treated by the State of Missouri and MSU in the past.

160. Please find the actual law passed by Missouri which is printed and included as an exhibit in this action: EXHIBIT NUMBER ONE:

http://www.senate.mo.gov/15info/pdf-bill/perf/SB93.pdf

Section A. Chapter 173, RSMo, is amended by adding thereto one new 2 section, to be known as section 173.1550, to read as follows: 173.1550. 1. The provisions of this section shall be known and 2 cited as the "Campus Free Expression Act". Expressive activities 3 protected under the provisions of this section include, but are not 4 limited to, all forms of peaceful assembly, protests, speeches, 5 distribution of literature, carrying signs, and circulating petitions. 6 2. The outdoor areas of campuses of public institutions of higher 7 education in this state shall be deemed traditional public 8 forums. Public institutions of higher education may maintain and 9 enforce reasonable time, place, and manner restrictions in service of a 10 significant institutional interest only when such restrictions employ 11 clear, published, content, and viewpoint-neutral criteria, and provide 12 for ample alternative means of expression. Any such restrictions shall 13 allow for members of the university community to spontaneously and 14 contemporaneously assemble. 15 3. Any person who wishes to engage in noncommercial expressive 16 activity on campus shall be permitted to do so freely, as long as the 17 person's conduct is not unlawful and does not materially and 18 substantially disrupt the functioning of the institution subject to the SCS SB 93 2 19 requirements of subsection 2 of this section. 20 4. Nothing in this section shall be interpreted as limiting the 21 right of student expression elsewhere on campus. 22 5. The following persons may bring an action in a court of 23 competent jurisdiction to enjoin any violation of this section or to 24 recover compensatory damages, reasonable court costs, and attorney 25 fees: 26 (1) The attorney general; 27 (2) Persons whose expressive rights were violated through the 28 violation of this section. 29 6. In an action brought under subsection 5 of this section, if the 30 court finds a violation, the court shall award the aggrieved persons no 31 less than five hundred dollars for the initial violation, plus fifty dollars 32 for each day the violation remains ongoing. 33 7. A person shall be required to bring suit for violation of this 34 section not later than one year after the day the cause of action 35 accrues. For purposes of calculating the one-year limitation period, 36 each day that the violation persists, and each day that a policy in 37 violation of this section remains in effect, shall constitute a new 38 violation of this section and, therefore, a new day that the cause of 39 action has accrued.

161. The issue is whether the MSU Security Guard failed his Duty of Care in the treatment of Steven L. Reed which had a detrimental effect liberty and purpose of this cause of action.

162. The case *Gantt v. City of L.A., 717 F.3d 702 (9th Cir. 2013)* says: *Monell liability Section 1983 allows for a civil action against any person who,* immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

163. From the U.S. App. 9th Cir. 9.32 Particular Rights—Fourteenth Amendment—Due Process—Interference with Parent/Child Relationship "Under the deliberate indifference standard, when "extended opportunities to do better are teamed with protracted failure even to care, indifference is truly shocking." *Id.* In *Gantt,* the Ninth Circuit approved the following definition of deliberate indifference:

164. Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result."

165. Willful and intentional conduct is that "amounting to more than gross negligence."

Id. at 1260 (quoting *Johnston v. Horne*, 875 F.2d 1415, 1422 (9th Cir.1989)).   An

agency acts in a willful or intentional manner "either by committing the act without

grounds for believing it to be lawful, or flagrantly disregarding others' rights under the

Act." *Covert v. Harrington*, 876 F.2d 751, 757 (9th Cir.1989) (quoting Albright v.

United States, 732 F.2d 181, 189 C.Cir.1984)). Per:  United States Court of Appeals,

Ninth Circuit. *Roland Ralph Wilborn, Plaintiff-Appellant, v. department of health and*

*human services, Defendant-*Appellee. No.93-35048, 1995

**166. Cruel and Unusual Punishment**

Under the Eighth Amendment, you have the right to be free from "cruel and unusual punishment." The ambiguous term has been interpreted to refer to any

punishment that can be considered inhumane treatment, or treatment that violates a person's dignity///MSU meet that bar.

The U.S. Supreme Court established the "shock    the    conscience    test in *rochin v. california*, 342 U.S. 165, 72 S. Ct. 205,96 L. Ed83 (1952). Based on the S. Constitution

Fourteenth Amendment's prohibition against states depriving any by state agents that f alls outside the standards of civilized decency. The conclusion is MSU crossed the line of decency and their duty to the to protect equally the rights of Steven L. Reed and punitive dames are necessary to make Appellant Steven L. Reed whole again.

## COUNT 30:MSU DENIED RIGHT OF POLITICAL ASSOCIATION

**167.** Plaintiff Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 149 thru 166 above with the same force and effect as if herein set forth.

**168. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals the level of guilt concerning denial of political association and should legal criminal charges be relevant if such is decided by a JURY.** The rule is that Political Association of the People is guaranteed in the 14th amendment to the Constitution.

**169.** The legal issue is concerning abuse of discretion. The rule is that Political Association of the People is guaranteed in the 14th amendment to the Constitution.

*Kusper v. Pontikes, ante* at <u>414 U. S. 57</u> (footnote omitted). At stake are

appellants' First and Fourteenth Amendment rights to associate with others for the common advancement of political beliefs and ideas. "The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. "*Ibid.; Williams v. Rhodes*, <u>393 U. S. 23</u>, <u>393 U. S. 30</u> (1968). At stake as well are appellants' interests as party members in casting an effective ballot. *See Bullock v. Carter*, <u>405 U. S. 134</u>, <u>405 U. S. 142</u>-144 (1972). The Constitution was designed to keep the government off the backs of the people and in this case volunteer community activist.

709 F.2d 1560, reversed *United States Supreme Court Roberts v. United States Jaycees*, (1984) No. 83-724 Brennan, J., delivered the opinion of the Court, in which WHITE, Marshall, Powell, and Stevens, JJ., joined, and in Parts I and III of which O'Connor, J., joined. O'connor, J., filed an opinion concurring in part and concurring in the judgment, post, p. 631. Rehnquist, J., concurred in the judgment. Burger, C. J., and Blackmun, J., took no part in the decision of the case. Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate

human relationships must [468 U.S. 609, 618] be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion.

**170.** The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties. Steven L. Reed believes being able to speak out on issues and to associate with other like-minded people and to be able to register run for office are the most basic, fundamental principles the Founding Fathers had in mind with the founding of the United States.

<u>**VIOLATION OF REED'S RIGHT TO POLITICAL ASSOCIATION**</u> as **discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## <u>COUNT/TORT NUMBER 31:</u> TORTS OF NEGLIGENCE, AND INTENT

**171.** Plaintiff Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 167 thru 170 above with the same force and effect as if herein set forth.

**172. MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, City of Springfield and Chief of Police, Missouri, Governor of Missouri, Library Staff, and Vice Presidents of Missouri State University, And other John and Jane Does as discovery reveals must be heard by a JURY concerning negligence and intent.**

173. Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omission for the very purpose of causing harm or with knowledge that harm will result." Willful and intentional conduct is that "amounting to more than gross negligence." Id. at 1260 (quoting *Johnston v. Horne*, 875 F.2d 1415, 1422 (9th Cir.1989)). An agency acts in a willful or intentional manner "either by committing the act without grounds for believing it to be lawful, or flagrantly disregarding others' rights under the Act." *Covert v. Harrington*, 876 F.2d 751, 757 (9th Cir.1989) (quoting Albright v. United States, 732 F.2d 181, 189 (D.C.Cir.1984)). Per: United States Court of Appeals, Ninth Circuit. *Roland Ralph Wilborn, Plaintiff-Appellant, v. department of health and human services, Defendant*-Appellee. No.93-35048, 1995.

## **COUNT/TORT NUMBER 32: INTENT 18 USCS**

174. Plaintiff Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 171 thru 173 above with the same force and effect as if herein set forth.

### INTENT 18 USCS

175. Reed contents it is/was a conspiracy to deny political association and to punish Appellant Reed for his political VOLUNTEER EFFORTS:

From: https://www.justice.gov/crt/deprivation-rights-under-color-law

### TITLE 18, U.S.C., SECTION 242

176. Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected

by the Constitution or laws of the United States, ... shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or

imprisoned for any term of years or for life, or both, or maybe sentenced to death.

**177.** Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself it invites anarchy. To declare that in the administration of the criminal law the end justifies the means -- to declare that the government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

Dissenting, *Olmstead v. United States*, 277 U.S. 438 (1928).

**As discovery reveals** jointly and severally, Actual Damages, severally, for actual, general, special, <u>actual damages, exemplary damages and punitive damages</u> in the amount of $8 Million and further demands judgment against each of said Defendants jointly and severally, for punitive damages in the amount of $2 Million Dollars, plus the cost of this action, including attorney's fees, and such other relief deemed to be just and equitable.

Plaintiff Steven Reed repeats and re-alleges and incorporates by reference the allegations in paragraphs 174 thru 177 above with the same force and effect as if herein set forth.

## CONCLUSSION

STEVEN L. REED HEREBY DECLARE HE IS A WHISTLEBLOWER CONCERNING THE INSTANT CASE.

**Shame on the City**

Steven L. Reed ran for mayor of Springfield Missouri and received over 9,000 votes.    The following editorial ran after the election.

https://www.news-leader.com/story/opinion/contributors/2015/10/13/reed-need-city-plan/73866460/

Thanks to all the people who talked/discussed issues this year when I ran for mayor. I thank the volunteer staff and team captains. But especially Jonathan Conrad who we lost in a tragic accident. He worked for two months and made contributions to fund the campaign. I've never known such a nice person and someone who cared so much about others. He worked so hard on issues to help others. He set the bar so high.

After the election last spring I was the only soul to attend all the nine public hearing meetings. In northside neighborhoods, the charts and graphs showed unemployment is running 20 to 30 percent while the south side of the city was near 0 percent. The state auditor said in 2006 we need an economic plan.

Last week I attended the meeting the mayor had concerning homeless people. I asked at the meeting, does the mayor agree with developing a regional economic plan for the north side to combat issues like poverty, homelessness, crime and jail overcrowding? And secondly, is it true we do not presently have an economic director for the city? Vice Chair of the new task force, Mr. Lynn Thompson, did step forward and said he understands. I said it is all connected and Mr. Thompson agreed but said the committee will be non-political and also will not get into economic issues.

Recently while in Frisco, Texas, for four weeks, I saw they have a new development called 5 Billion Dollar Mile with the Dallas Cowboys headquarters being located along with city attractions and 5,000 new jobs, a new Toyota plant, 2,000 new homes last year, "for hire" signs everywhere and new cars everywhere. Serious investment to put in infrastructure and widen roads should be part of a plan and to widen some areas of Glenstone, and give incentives to move some of those businesses north. A technology park, or production factory work, a Route 66 museum — or some point to Oklahoma City that is using passenger rail to bring new businesses — which could work on the north side. Some say people need to fix up and clean up their homes but they can not do that with part-time low-wage jobs. The bus system takes too long for people to get to work on the south side and on the north side have no shelters to protect them from rain and snow for people waiting to go to work.

We need town hall meetings at Missouri State University to get ideas from the public. If we are going to address the issues facing our city and ones pointed out by the News-Leader editorial board in several recent editorials, we need serious investment on the north side which effects all the city. In conclusion, let's ask Mr. John L. Morris to consider helping start a foundation to help develop an

arching economic plan for the north side. Anyone who may want to make suggestions can e-mail me at mrstevenlreed@yahoo.com.

Steven Reed lives in Springfield.

After election Reed went to all meetings over a north-side blitz.      City staff took pictures at the meeting held mainly at schools about what people in North side need.    Pictures of the meetings and posted on city site during the couple of month time.    REED was only person made all meetings. Current Councilman Mike Schilling tried but missed one.    No other city staff or city manager attended all.    They posted pictures with Steven Reed talking with people and taking notes.    When north-side blitz was done little happened to help the north-side people.    ALL PHOTOS OF Steven Reed was cropped out of the pictures by City Staff.    Steven Reed has attended more city council meetings than anyone ever and that is how the city treats him...That is corruption.    Need to vote on going back to north-south Springfield as used to be....paid council North...City taking poor people grant money and spending on Southside.

## Conclusion

THIS INSTANT CASE  CONCERNS IS FIRST TIME A CASE HAS BEEN FILED CONCERNING THIS LAW PASSED BY THE GOVERNOR AND MISSOURI STATE LEGISLATURE AND PLAINTIFF REED REQUEST AND REQUEST LEAVE FROM THIS COURT IN THE INSTANT ACTION SO THAT THE STATUTE OF LIMITATIONS ON BILL NUMBER SENATE BILL NO. 93 98TH GENERAL ASSEMBLY OF MISSOURI BE CHANGED TO THE NORMAL THREE YEARS TO ALLOW FOR INITIAL SHOCK OR LACK OF TO COOL DOWN AND DECIDE IF LEGAL ACTION IS NECESSARY TO MAKE A PERSON WHOLE UNDER THE NEW LAW.

THIS CAUSE OF ACTION IS ALSO FILED AGAINST ALL NAMED DEFENDANTS AS A REDRESS OF GRIEVANCES AGAINST CONSTITUTIONAL VIOLATIONS INCLUDING DEPRIVATION OF CONSTITUTIONAL RIGHTS AND PRIVILEGES OF FREEDOM OF SPEECH TO INFLUENCE GOVERNMENTAL ACTIONS THRU DEMOCRATIC PROCESSES UNDER RULE OF LAW WHICH REQUIRES THE LAWS OF THE STATE AND FEDERAL GOVERNMENT BE FOLLOWED INCLUDING EQUAL PROTECTION OF REED'S RIGHTS UNDER THE FORTEENTH AMENDMENT AND THE JURY NEEDS TO DETERMINE THE FACTS IN THE INSTANT CASE.

## LIST OF EXHIBITS:

EXHIBIT NUMBER ONE  Missouri Free Speech Zone Law.

**EXHIBIT NUMBER TWO** Standard Student Paper Front Page Expanding Free Speech.

**EXHIBIT NUMBER THREE** Video Disk Reed and Security Guard.

**EXHIBIT NUMBER FOUR**   May 3, 2000 Standard Article Technology Park.

**EXHIBIT NUMBER FIVE**   Nov. 7 2001 Standard Article Proposed Rail System Inexpensive transportation.

**EXHIBIT NUMBER SIX**   Reed Editorial We Need a Better Plan, also ran in USA Today.

**EXHIBIT NUMBER SEVEN**   Reed on front page of Standard Draft McCaskill Founder.

**EXHIBIT NUMBER EIGHT**   Lady registered to vote at MSU.

**EXHIBIT NUMBER NINE**   Chief of Police Letter.

**EXHIBIT NUMBER TEN**   Student signed petition right before MSU Security Guard arrived.

---

**Date:** _September 30, 2019_

---

(Signature of the attorney or unrepresented party)

_Steven R. Reed_

**(Printed Name)**

**Steven L. Reed**   _Steven L. Reed_

**(Address)**

 2010 S. Ingram Mill Rd. F-6

**(E-Mail)**

mrstevenlreed@yahoo.com

**Telephone Number**