IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| STEVEN L. REED, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 19-03348-CV-S-BP |
| | ) | |
| CLIFF SMART, Missouri State University, | ) | |
| President, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MSU DEFENDANTS' SUGGESTIONS IN SUPPORT OF MOTION TO DISMISS

Pursuant to 28 U.S.C. § 1915(e)(2)(B), Defendants Missouri State University President Clif Smart (misnamed Cliff Smart by Plaintiff), Missouri State University Security Guard, Missouri State University Board of Governors, and Vice Presidents of Missouri State University, (collectively, the "MSU Defendants") respectfully submit these legal suggestions in support of their motion to dismiss the Complaint filed by Plaintiff Steven Reed ("Reed").

## INTRODUCTION

Reed brings the present cause of action *pro se*, and on October 25, 2019 (Doc. 6), this Court granted Reed leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 as to certain claims against certain defendants "subject to further consideration upon demonstration to the Court that the allegation of poverty is untrue or that the claim(s) is frivolous or otherwise barred under 28 U.S.C. § 1915."

As the Court recognized, Reed's Complaint is redundant and confusing. As to the MSU Defendants, Reed asserts a litany of claims stemming from a perceived history and conspiracy involving Missouri State University targeting Reed whenever he was on the campus. This conspiracy, according to Reed, culminated on October 29, 2016 when a security guard employed

by MSU asked him to leave campus property because he was petitioning for signatures outside the entrance of the MSU library.

Even giving Reed's Complaint against the MSU Defendants a liberal construction, it has no arguable basis in fact or law, fails to plead facts sufficient to state a claim plausible on its face, and requests monetary relief against defendants who are immune from such relief.

This Court should dismiss Reed's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

### ARGUMENT

When a plaintiff seeks to proceed *in forma pauperis*, the Court shall dismiss a cause of action "at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

**I.  REED'S COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM THAT IS PLAUSIBLE ON ITS FACE AND THEREFORE THE COMPLAINT MUST BE DISMISSED UNDER 28 U.S.C. § 1915(e)(2)(B)(ii).**

To the extent Reed's Complaint sets forth cognizable claims at all, whether artfully stated or not, Reed's claims arise under 42 U.S.C. § 1983 and allege a violation or deprivation of his constitutional rights.

"Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"To avoid dismissal, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) (quoting *Bell Atlantic*

2

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim for relief is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts that are "merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (quotation omitted). The threadbare recitation of the elements, supported only by conclusory statements, do not suffice. *Id.* Indeed, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019).

This same Court addressed Reed's ability to bring a § 1983 claim against MSU in a prior case filed by Reed against MSU, which was referenced in the Court's Order Granting Motion to Proceed In Forma Pauperis (Doc. 6). In *Reed v. Southwest Missouri State Univ.*, Case No. 01-03634-GAF (closed May 31, 2002), this Court dismissed a § 1983 claim brought by Reed against MSU because "it is clear that Eleventh Amendment immunity applies to SMSU in this situation."[1] Consistent with this Court's holding against Reed's previous § 1983 claim, Eleventh Amendment immunity applies in this case such that Reed's Complaint is barred against MSU and the officials acting on its behalf, *i.e.*, the MSU Defendants. Reed's Complaint must be dismissed.

Additionally, Defendants Smart, MSU Board of Governors, and Vice Presidents of MSU must be dismissed from this action because Reed fails to allege any causal link between those officials and the purported deprivation of rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Reed also fails to provide facts that demonstrate that any university officials were directly responsible for the alleged deprivation. This alone is a sufficient basis

---

[1] Missouri State University was known as Southwest Missouri State University ("SMSU") at the time of the previous case.

upon which to dismiss Reed's Complaint against Defendants Smart, MSU Board of Governors, and Vice Presidents of MSU.

The Court should also dismiss Defendants Smart, MSU Board of Governors, and Vice Presidents of MSU because they are subdivisions of the state. "It is settled in this circuit that public universities and their corporate board of regents, as political subdivisions of the state, may not be sued under [§] 1983 since they are not persons within the meaning of [§] 1983." *Regents of Univ. of Minnesota v. Nat'l Collegiate Athletic Ass'n*, 560 F.2d 352, 362 (8th Cir. 1977) (citing *Prostrollo v. Univ. of South Dakota*, 507 F.2d 775, 777 n.1 (8th Cir. 1974)). As university officials, and thus subdivisions of the state, Defendants Smart, MSU Board of Governors, and Vice Presidents of MSU cannot be sued under § 1983. The Court should dismiss Reed's claims against these defendants.

Defendant MSU Security Guard must also be dismissed because he/she is protected as a state actor by qualified immunity. *Waters*, 921 F.3d at 734. Qualified immunity shields state officers from lawsuits based on their official conduct "if reasonable officers in the same position could have believed their conduct was 'lawful, in light of clearly established law and the information the . . . officers possessed' at the time." *Id.* at 734-35 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). To overcome qualified immunity, Reed must allege a violation of his rights, and he must allege that the right was "clearly established" at the time of the supposed misconduct. *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Furthermore, because immunity protects state officers from suit generally, and not just liability, "courts should 'resolv[e] immunity questions at the earliest possible stage in litigation.'" *Id.* at 735 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (2009)).

Reed alleges his right to petition for signatures in front of MSU's library was violated by an MSU security guard requiring him to petition elsewhere. Although Reed appears to contend he had a right to engage in this activity in front of the MSU library at that time, Reed never alleges that this right was "clearly established." Nor does Reed allege any facts that would support a finding that his alleged right to petition in front of the MSU library was clearly established.

The shifting, fact-based analysis surrounding Reed's alleged right to access MSU property for petitioning is further evidence that this right is not clearly established, and that Reed fails to plead otherwise. "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Bowman v. White*, 444 F.3d 967, 974 (8th Cir. 2006) (quotation omitted). Where a major university campus has numerous types of open spaces, they are not all to be treated as one type of forum, but are subject to an analysis by specific area. *See id.* at 976-79. When an area is a designated public forum, the analysis requires further consideration of the time, place, and manner of any restrictions. *See id.* at 980. Reed fails to state any facts to state a claim plausible on its face that his alleged rights were "clearly established at the time of the defendant's alleged misconduct." *Waters*, 921 F.3d at 735 (quotation omitted). Accordingly, the Court should dismiss Reed's Complaint against Defendant MSU Security Guard.

To the extent the Court does not dismiss the claims against Defendant Clif Smart for the reasons above, he is immune from suit on the same basis as the MSU Security Guard because Reed's claims against Defendants Smart and MSU Security Guard are identical and qualified immunity applies to college presidents. *Lane v. Franks*, 573 U.S. 228, 243-46 (2014) (finding a college president entitled to qualified immunity).

As the Court has stated, many of Reed's claims are duplicative and are not recognized causes of action. Indeed, most of Reed's Complaint consists of repeated allegations that Reed's constitutional rights were violated, and these claims should be dismissed for the reasons above. To the extent Reed has presented causes of action outside of § 1983, he has only recited the elements of other perceived claims without anything more than mere conclusory statements for support. (*See, e.g.*, Doc. 1-1, Counts 22-29, 31). The Court is not required to accept Reed's conclusory allegations and legal conclusions. *Waters*, 921 F.3d at 734. None of Reed's claims provide enough facts to state a claim for relief that is plausible on its face.

Lastly, there are multiple instances where Reed's Complaint references Missouri Senate Bill No. 93, now Mo. Rev. Stat. § 173.1550. But none of Reed's 32 stated causes of action in fact seek to bring a claim under § 173.1550. If the Court construes Reed's Complaint to read a claim brought under § 173.1550, such claim is nonetheless barred by the statute of limitations.

Subsection 7 of § 173.1550 provides that "A person shall be required to bring suit for violation of this section not later than one year after the day the cause of action accrues." The misconduct alleged by Reed would have occurred in October 2016, more than one year prior to Reed's filing of a complaint in September 2019. Furthermore, Reed does not allege any persistent violation of § 173.1550 or any policy in violation of § 173.1550. Accordingly, as evident from the face of Reed's Complaint, any colorable claim under Mo. Rev. Stat. § 173.1550 is barred by the applicable statute of limitations, and therefore fails to state any claim plausible on its face.

The Court should dismiss Reed's Complaint against the MSU Defendants for its failure to state claim on which relief may be granted.

## II. REED'S COMPLAINT HAS NO ARGUABLE BASIS IN LAW OR FACT AND THEREFORE THE COMPLAINT MUST BE DISMISSED AS FRIVOLOUS UNDER 28 U.S.C. § 1915(e)(2)(B)(i).

The dismissal of a frivolous *in forma pauperis* proceeding is "extremely important" and "appropriate to prevent abuses of the processes of the Court." *Serna v. O'Donnell*, 70 F.R.D. 618, 621 (W.D. Mo. 1976). An *in forma pauperis* action is frivolous if it "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is factually frivolous if the allegations are "clearly baseless," which includes those that are "fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citation omitted).

Several of Reed's claims are nonsensical and, as the Court has stated, not recognized as causes of action. (*See, e.g.*, Doc. 1-1, Counts 1, 2, 5-7, 12, 32). Moreover, all of Reed's claims center around his chief complaint that the MSU Defendants conspired to violate his constitutional rights and target him whenever he came onto MSU's campus. Reed's Complaint is clearly baseless. It relies on fanciful and delusional conspiracy theories regarding MSU and the officials acting on its behalf. The Complaint is factually frivolous. Furthermore, the Complaint lacks an arguable basis in law because the MSU Defendants are immune from suit and the MSU Security Guard's alleged conduct was not a violation of Reed's clearly established rights on MSU's campus.

The Complaint is frivolous on its face and must be dismissed.

## III. REED'S COMPLAINT SEEKS MONETARY RELIEF AGAINST DEFENDANTS WHO ARE IMMUNE FROM SUCH RELIEF AND THEREFORE THE COMPLAINT MUST BE DISMISSED UNDER 28 U.S.C. § 1915(e)(2)(B)(iii).

Claims asserted against state actors in their official capacity are "tantamount to a lawsuit against the state." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because the Eleventh Amendment immunizes the states from suit, state officials acting in their official capacities are

likewise immune from suit and are not "persons" under § 1983 when sued for damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Likewise, Eleventh Amendment immunity applies generally to bar any action for damages against state universities and its officials. *Becker v. Univ. of Nebraska*, 191 F.3d 904, 909 (8th Cir. 1999).

Reed repeatedly presents his claims as against MSU officials acting in their official capacities. Throughout his Complaint, Reed asserts his claims against "MISSOURI STATE UNIVERSITY, AKA as MSU Defendant: Defendants: Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, . . . and Vice Presidents of Missouri State University." When he does request relief in some manner or another, Reed seeks monetary relief in the form of actual damages, punitive damages, costs, attorney's fees.

Accordingly, Reed's claims seeking damages from the MSU Defendants must be dismissed. Although Reed requests "such other relief deemed to be just and equitable," no such other relief is ever spelled out, and therefore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), Reed's Complaint should be dismissed entirely.

## CONCLUSION

This Court should grant the MSU Defendants' motion and dismiss Reed's Complaint with prejudice, along with such other and further relief as the Court deems just.

Date: November 29, 2019					Respectfully submitted,

					/s/  Robert Schaeffer
					BRYAN O. WADE		MO# 41939
					ROBERT SCHAEFFER	MO# 69324
					HUSCH BLACKWELL LLP
					901 St. Louis Street, Suite 1800
					Springfield, Missouri  65806
					(417) 268-4128
					(417) 268-4040 (FAX)
					bryan.wade@huschblackwell.com
					robert.schaeffer@huschblackwell.com

					*Attorneys for Defendants Missouri State University President Cliff Smart, Missouri State University Security Guard, Missouri State University Board of Governors, and Vice Presidents of Missouri State University*

## CERTIFICATE OF SERVICE

I hereby certify on this 29th day of November, 2019, a true and correct copy of the above and foregoing was filed with the Clerk of the Court using the court's ECF system, and sent by first class US Mail, postage prepaid, to the following address:

Steven L. Reed
2010 S. Ingram Mill Rd. F-6
Springfield, MO 65804

					/s/  Robert Schaeffer