## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| STEVEN L. REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-03348-CV-S-BP |
| | ) | |
| CLIFF SMART, Missouri State University | ) | |
| President, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING MSU DEFENDANTS' MOTION TO DISMISS

In this case, *pro se* Plaintiff Steven L. Reed alleges that his freedom of speech and other

civil rights were violated in front of the library at Missouri State University ("MSU"). Now

pending is Defendant Missouri State University President Clif Smart ("Smart") (misnamed Cliff

Smart in the Complaint), Missouri State University Board of Governors ("MSU Board of

Governors"), Vice Presidents of Missouri State University ("Vice Presidents of MSU"), and

Missouri State University Security Guard's ("MSU Security Guard") (collectively, the "MSU

Defendants") Motion to Dismiss Plaintiff's Complaint. (Doc. 12.) The motion argues that the

Complaint is barred by Eleventh Amendment immunity and fails to state a claim upon which relief

may be granted. As explained below, the Court finds that Plaintiff has failed to state a claim

against the MSU Defendants. The motion, (Doc. 12), is therefore GRANTED.

## I. BACKGROUND

Plaintiff's Complaint is 62 pages long. (Doc. 7.) A significant portion of the Complaint is

confusing and redundant. Highly summarized, the Complaint alleges the following facts, which

are liberally construed in a light most favorable to Plaintiff. Plaintiff is a resident of Springfield,

Missouri. (*Id.*, p. 8, ¶ 3.)[1] For the last 28 years, he has engaged in various volunteer and political activities, including voter registration drives. (*Id.*, p. 8, ¶ 3; p. 19, ¶ 25.) On or about October 29, 2016, Plaintiff was gathering signatures for a petition at the entrance of the library at MSU. (*Id.*, pp. 3-4, ¶ 11; p. 20, ¶¶ 27, 32-34.) Plaintiff alleges he had a "right to be at the library entrance at MSU." (*Id.*, p. 20, ¶ 31.) This right allegedly arises from the fact that Plaintiff was "in front of a 'state-owned' building which allows 'freedom of speech,'" and because a "new state law . . . allows petitioning." (*Id.*, p. 20, ¶¶ 26, 33; p. 40, ¶ 106.) Plaintiff also alleges there were no signs in the area that suggested he could not be at that location. (*Id.*, p. 34, ¶ 85.)

While Plaintiff was gathering signatures, Defendant MSU Security Guard approached Plaintiff, threatened to call the police, and told him to leave the area. (*Id.*, p. 20, ¶¶ 27, 31-33.) The MSU Security Guard told Plaintiff that he "would need to go to a public street like Grand Street." (*Id.*, p. 43, ¶ 116.) Attached to the Complaint are several exhibits, including a video of this alleged encounter. The Complaint contends this event was caused by an unconstitutional policy or custom, that Smart, MSU's Vice Presidents, and MSU's Board of Governors failed to properly train and supervise the MSU Security Guard, and/or that the MSU Defendants conspired with each other and the Springfield Police to deprive him of his civil rights. (*Id.*, p. 6, D.; p. 18, ¶¶ 17-18.) Citing events that began in 2000, the Complaint alleges that the MSU Defendants have a history of bullying, harassing, and intimidating Plaintiff. (*Id.*, p. 11; p. 19, ¶ 24.)

The Complaint asserts 32 causes of action under federal and state law, including a claim under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the First and Fourteenth Amendments, a conspiracy claim under 42 U.S.C. § 1983 and § 1985, and a claim for violation of Missouri's Campus Free Expression Act, Mo. Rev. Stat. § 173.1550. (*Id.*, pp. 17-18, Count 4; pp.

---

[1] All page numbers cited herein are those generated by the Court's CM/ECF system.

35-36, Count 18; pp. 43, 48.)[2] Plaintiff seeks $10,000,000 in actual and punitive damages against the MSU Defendants. (*Id.*, p. 1; Doc. 7-1.) The Complaint also requests that the Court consider "whether federal funds should be cut" from MSU, a remedy to prevent "future violations," and "declaratory relief." (Doc. 7, pp. 18, 29, 33.)

On October 25, 2019, the Court granted Plaintiff leave to proceed in forma pauperis against the MSU Defendants, the City of Springfield, Missouri and Chief of Police, and John and Jane Does because the Complaint arguably stated a claim under § 1983 for the incident on October 29, 2016. (Doc. 6, p. 4.) However, the Court denied Plaintiff's request to reopen his prior cases that had been dismissed, and denied Plaintiff leave to relitigate any claim that had been previously adjudicated. (*Id.*, p. 5.)

The MSU Defendants now move to dismiss all claims against them. They argue that Plaintiff's claims are barred by Eleventh Amendment immunity, fail to state a claim upon which relief may be granted, and are barred by qualified immunity.[3] Plaintiff opposes the motion. He primarily argues that the Complaint states a claim, that his claims will be bolstered through discovery, and that a jury should decide whether he is entitled to relief. The MSU Defendants did not file a reply brief. These issues are addressed below.

---

[2] As titled, many of the claims are not cognizable. (*See, e.g.*, Doc. 7, pp. 12-16, "Count One: Consequences of Unconstitutional Investigation;" "Count 2: Plaintiff Steven L. Reed Seeks Substantial Justice.") Additionally, the Complaint cites and quotes numerous constitutional provisions, statutes, and case law. Most of this authority appears inapplicable, irrelevant, and/or fails to state a claim. Finally, many of his claims are redundant. The Court has attempted to discern claims that could arguably be viable and discusses them below.

[3] The motion also seeks dismissal under 28 U.S.C. § 1915. This statute provides that "the court shall dismiss the case [proceeding in forma pauperis] at any time if the court determines that" it "is frivolous or malicious," "fails to state a claim on which relief may be granted, or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). The failure to state a claim standard under § 1915 is similar to that under Federal Rule of Civil Procedure 12(b)(6). *See Atkinson v. Bohn*, 91 F.3d 1127, 1128-29 (8th Cir. 1996). This Order cites Rule 12(b)(6) because it is the appropriate vehicle to challenge the sufficiency of a complaint.

## II. DISCUSSION

When considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); Fed. R. Civ. P. 12(b)(6). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 678 (quotations and citations omitted). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A *pro se* complaint is construed "liberally, but the complaint must still allege sufficient facts to support the claims advanced." *Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019).

### A. The MSU Defendants Have Failed to Show that the Complaint is Barred by The Eleventh Amendment

The MSU Defendants argue that Plaintiff's claims arise under § 1983 and are barred by Eleventh Amendment immunity. (Doc. 13, pp. 3, 7-8); *T.S.H. v. Northwest Mo. State Univ.*, 2019 WL 4647263, at * 2 (W.D. Mo. Sept. 23, 2019) ("Sovereign immunity is a jurisdictional, threshold matter[.]").[4] The Eleventh Amendment provides that "[t]he Judicial power of the United States

---

[4] The MSU Defendants appear to raise a facial attack on jurisdiction based on the face of the pleadings, which would ordinarily be raised in a Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). Conversely, a factual attack under Rule 12(b)(1) would allow consideration of matters outside the pleadings. *Id.*

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S. Const. amend. XI; *see also Lors v. Dean*, 746 F.3d 857, 862 (8th Cir. 2014). As relevant

here, "Section 1983 does not override Eleventh Amendment immunity." *Hadley v. N. Ark. Cmty.*

*Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996).

If applicable, the Eleventh Amendment bars suit against a state and state agencies "for any

kind of relief, not merely monetary damages." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th

Cir. 2007).[5] The Eleventh Amendment does not bar a suit against state officials in their official

capacity for prospective, non-monetary relief. *Id.* To determine whether a state university is

immune, a court must examine "whether the suit is in reality a suit against the state." *Sherman v.*

*Curators of Univ. of Mo.*, 16 F.3d 860, 863 (8th Cir. 1994). This requires "factual findings" on

"whether any judgment rendered against the entity would ultimately come out of state funds" and

the university's "overall degree of autonomy from the State of Missouri." *Id.* at 863-64; *see also*

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (considering facts such as "the nature of

the entity created by state law"). Similarly, a state "official may invoke the State's Eleventh

Amendment immunity if immunity will protect the state treasury from liability that would have

had essentially the same practical consequences as a judgment against the State itself." *Hadley*,

76 F.3d at 1438 (quotations omitted).

In support of Eleventh Amendment immunity, the MSU Defendants rely on a prior case

filed by Plaintiff against MSU, *Reed v. Southwest Missouri State University*, Case No. 01-CV-

03634-GAF (W.D. Mo. Feb. 5, 2002).[6] In *Reed*, Plaintiff alleged he was wrongfully arrested

---

[5] Plaintiff appears to allege that the MSU Security Guard was a state actor, and the MSU Defendants do not argue
otherwise.

[6] MSU was previously known as Southwest Missouri State University.

during a volunteer voter registration drive.  *Id.*, Doc. 3, p. 2.  The court dismissed the initial

complaint, concluding "it is clear that Eleventh Amendment immunity applies to SMSU in this

situation."  *Id.*, Doc. 12, p. 3.  However, the *Reed* decision did not make factual findings about

whether damages would be paid from the state treasury or SMSU's degree of autonomy from

Missouri.  *Id.*[7]

In this case, the MSU Defendants have not presented any evidence relevant to the Eleventh

Amendment analysis.  Moreover, the Complaint arguably requests prospective, non-monetary

relief against a state official, including declaratory relief and relief to prevent "future violations."

On the current record, the MSU Defendants have failed to show they are entitled to Eleventh

Amendment immunity.  *Sherman*, 16 F.3d at 863-64.

## B.  The Complaint Fails to State a § 1983 Claim Against the MSU Defendants

The MSU Defendants argue that Plaintiff has failed to adequately state a § 1983 claim

against them.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must show [1] that he was

deprived of a right secured by the Constitution and the laws of the United States and [2] that the

deprivation was committed by a person acting under color of state law."  *Alexander v. Hedback*,

718 F.3d 762, 765 (8th Cir. 2013).

"Public servants may be sued under section 1983 in either their official capacity, their

individual capacity, or both."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.

1999).  Here, the Complaint does not specify whether any of the MSU Defendants are being sued

in an official or individual capacity.  As such, the Complaint must be construed as asserting official

capacity claims only.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (recognizing that "in

---

[7] In a subsequent and unrelated case cited by neither party, MSU was found to have Eleventh Amendment immunity. *See Cron v. Bd. of Governors of Mo. State Univ.*, 2007 WL 9718096, at * 2 (W.D. Mo. Sept. 17, 2007).  *Cron* relied in part on an affidavit that showed damages would be paid from state funds.  *Id.*  No such evidence has been presented in this case, and the facts set forth in *Cron* may no longer be applicable today.

order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quotations omitted). An official-capacity suit should thus "be treated as a suit against the entity." *Id.* at 166. "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). When the plaintiff has only asserted official-capacity claims, § 1983 liability may attach if the constitutional violation resulted from the execution of "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick*, 883 F.3d at 1079 (citations and quotations omitted); *Johnson*, 172 F.3d at 535. A vicarious liability or respondeat superior theory is not sufficient. *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 (8th Cir. 2012) (citations and quotations omitted); *Johnson*, 172 F.3d at 535.

The MSU Defendants move to dismiss the § 1983 claims because the Complaint does not adequately "allege any causal link between" them and the alleged deprivation of Plaintiff's rights. (Doc. 13, pp. 3-5.) Plaintiff alleges the existence of an unconstitutional "policy or custom" and that Defendants "can be held liable if it can be shown that the security guard was told to harass [him] and that discovery shows others were involved[.]" (Doc. 7, pp. 6, 38.) Plaintiff also summarily alleges that the MSU Defendants failed to properly train or supervise the security officer, and that "all these top officials have a responsibility to make sure constitutional and state laws are properly administered as a responsibility and duty of care." (Doc. 7, p. 20; Doc. 14, pp. 3, 7.) These allegations are insufficient to state a claim.

First, "[t]o prove the existence of a policy, a plaintiff must point to an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Marsh v. Phelps Cnty.*, 902 F.3d 745, 752 (8th Cir. 2018). The Complaint alleges that the incident in October 2016 was the result of a policy, (Doc. 7, p. 38), but these allegations are conclusory. There are no plausible allegations of an official policy, much less that a policy played a role in the alleged incident. *Id.*; *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016).

Second, a custom is a "continuing, widespread, persistent pattern of unconstitutional conduct," and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). To the extent that Plaintiff alleges MSU has a custom of violating his civil rights, these allegations are conclusory and based in part on claims already decided against him. (Doc. 7, p. 7 (referencing arrest and related conduct in 2000 that was dismissed in *Reed*, 01-CV-03634-GAF)). In addition, Plaintiff only complains about his own alleged mistreatment and has not adequately alleged a widespread pattern of unconstitutional conduct. *Kelly v. City of Omaha*, 813 F.3d 1070, 1076 (8th Cir. 2016) ("Kelly also failed to allege any facts relating to other perpetrators or victims of such conduct, which might have indicated that sexual harassment was sufficiently widespread among City officials[.]"); *Elbert v. City of Kansas City*, 2019 WL 1374570, at * 3 (W.D. Mo. Mar. 26, 2019) ("Plaintiff has not identified any other transgressions that have occurred despite his own; therefore, Plaintiff cannot demonstrate a pattern of unconstitutional conduct has taken place.").

Third, Plaintiff's allegations regarding inadequate training or supervision are similarly deficient. (Doc. 7, p. 20). Plaintiff only offers conclusions and does not plead facts sufficient to

show that (1) any training or supervision practices were inadequate; (2) that the MSU Defendants were deliberately indifferent to the rights of others in adopting such practices; and (3) that any training or supervisory deficiencies caused a constitutional deprivation. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).

Under these circumstances, the Court finds that the Complaint does not state a § 1983 claim against the MSU Defendants.

### C.  The Complaint Fails to State a Conspiracy Claim Against the MSU Defendants

Plaintiff asserts one or more conspiracy claims, including under 42 U.S.C. §§ 1983 and 1985.  (Doc. 7, pp. 35-36.)  The MSU Defendants argue the conspiracy claims are "fanciful and delusional" and should be dismissed.  (Doc. 13, p. 7.)

Among other elements, a § 1983 conspiracy claim "requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).  A § 1985 conspiracy claim similarly requires that a plaintiff "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Kelly*, 813 F.3d at 1077-78 (citations omitted).[8]  The allegations must "suggest a meeting of the minds directed toward an unconstitutional action." *Id.* at 1078 (citations and quotations omitted).

Plaintiff has not adequately stated a claim for conspiracy.  Plaintiff summarily alleges that the MSU Defendants, the City of Springfield, the Springfield Police, and John and Jane Does "acted in conspiracy . . . to violate plaintiff's rights by demanding he stop his actions of free speech with the threat of his arrest and punishment."  (Doc. 7, pp. 11, 35-36.)  However, the Complaint does not contain any well-pled facts that plausibly suggest the MSU Defendants entered into any

---

[8] A conspiracy claim under Missouri law includes similar elements. *Roseman v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017) (citing Missouri case law).

agreement or had "a meeting of the minds directed toward an unconstitutional action." *Kelly*, 813

F.3d at 1078.  Consequently, Plaintiff has failed to state a conspiracy claim against the MSU

Defendants.

## **D.  The Complaint Fails to State a Claim Under State Law**

Plaintiff alleges that the MSU Defendants violated Mo. Rev. Stat. § 173.1550, which is

known as the Campus Free Expression Act.  (Doc. 7, pp. 20, 48.)  The Campus Free Expression

Act became effective on August 28, 2015.  It provides in relevant part that:

> [t]he outdoor areas of campuses of public institutions of higher
> education in this state shall be deemed traditional public forums.
> Public institutions of higher education may maintain and enforce
> reasonable time, place, and manner restrictions in service of a
> significant institutional interest only when such restrictions employ
> clear, published, content, and viewpoint-neutral criteria, and provide
> for ample alternative means of expression.

Mo. Rev. Stat. § 173.1550.2.  The statute allows a person "whose expressive rights were violated

through the violation of this section" to file suit for injunctive relief or for compensatory damages,

costs, and attorney fees.  Mo. Rev. Stat. § 173.1550.5(2).

Importantly, the statute provides that "[a] person shall be required to bring suit for violation

of this section not later than one year after the day the cause of action accrues."  Mo. Rev. Stat. §

173.1550.7.  Here, the incident Plaintiff complains of occurred in October 2016, but Plaintiff did

not file this lawsuit until September 2019.  The Complaint appears to request tolling or an

extension of the limitations period because "someone is upset and may not know if there is or is

not a case and cause of action," and to allow "for a cooling down period."  (Doc. 7, p. 21.)

Plaintiff's opposition brief cites no authority in support of this proposition.  Moreover, Plaintiff

clearly knew of the law on October 29, 2016 because he referred to it during his discussion with

the MSU Security Guard. Therefore, the Court finds that any claim under Mo. Rev. Stat. § 173.1550 is time-barred and must be dismissed.[9]

In summary, Plaintiff has not plausibly stated a claim—either within or independent of § 1983—against the MSU Defendants or the John and Jane Doe Defendants employed by MSU.[10] Plaintiff believes discovery will show wrongdoing, and that a jury should decide his claims, (Doc. 14, pp. 3, 7), but he is not entitled to either absent a viable cause of action. *Iqbal*, 556 U.S. at 678-79 (recognizing that the "doors of discovery" are not "unlock[ed] . . . for a plaintiff armed with nothing more than conclusions"); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 (1979) ("[M]any procedural devices developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment.").

### III. CONCLUSION

Accordingly, the MSU Defendants' Motion to Dismiss Plaintiff's Complaint, (Doc. 12), is GRANTED.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: January 8, 2020                    UNITED STATES DISTRICT COURT

---

[9] The MSU Defendants also move to dismiss any claim against the MSU Security Guard as barred by qualified immunity. However, as stated above, the Complaint only asserts official capacity claims. Because qualified immunity "is not a defense available to governmental entities, but only to government employees sued in their individual capacity," this argument is not addressed. *Johnson*, 172 F.3d at 535.

[10] Plaintiff asserts additional claims against the MSU Defendants, including for "threat of assault," battery, and defamation. (Doc. 7, pp. 48-49.) He also claims that "a lady or foreign person would not have been put through such intimidation, humiliation, and mental stress." (*Id.*, p. 20, ¶ 32.) None of these claims are plausibly stated.